**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**JAMES SPRINGER,**

       **Plaintiff,**

**v.**

                              **Civil Action No.**

**MICHELLE LUJAN GRISHAM,**
**OFFICE OF THE GOVERNOR,**
**PATRICK ALLEN, and**
**NM DEPARTMENT OF HEALTH,**

       **Defendants.**

**COMPLAINT[1] FOR DECLARATORY AND INJUNCTIVE RELIEF FOR
CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C.A. §1983; VIOLATIONS
OF RIGHTS PROTECTED BY THE NEW MEXICO CIVIL RIGHTS ACT;
EMERGENCY REQUEST FOR A TEMPORARY RESTRAINING ORDER;
REQUST FOR PRELIMINARY INJUNCTION, PERMANANT INJUNCTIVE
RELIEF AND DAMAGES**

COMES NOW Plaintiffs hereby respectfully move this Honorable Court for a
temporary restraining order, preliminary injunction, and permanent injunctive relief pursuant
to Federal Rule of Civil Procedure 65, and for declaratory relief against the individually
named Defendants acting in their individual capacities under the color of law, and for damages
against the Seventh Judicial District Court pursuant to the New Mexico Civil Rights Act, and
states as follows in support thereof.

**INTRODUCTION**

Thomas Paine in <u>American Crisis</u> stated that: "tyranny, like hell, is not easily
conquered, yet, we have this consolation with us, that the harder the conflict, the more glorious
the triumph." Yet the tyranny proposed by the Governor her is that her supposed end of

---

[1] The Complaint and Motion are verified by the Declaration of James Springer attached hereto.

combating gun is based of a false belief that disarming law abiding citizens will cause individuals engaged in criminal activity to forego the use of firearms in criminal activities. Unfortunately, this belief is so widespread that many persons have erroneously held that things are 'just' because law makes them so."  Frédéric Bastiat, *The Law*, The Foundation for Economic Education, Inc., Irvington-on-Hudson, New York 10533. Here, it is clear that Governor Lujan Grisham has knowingly (she is herself an attorney and is familiar with the United States Supreme Court Decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022)) acted in contravention of the United States Constitution and the New Mexico Constitution in contravention of the clear prohibition of 18 USCA §242.

## PARTIES AND JURISDICTION

1. Plaintiff James Springer is currently a resident of Torrance County, New Mexico. Plaintiff is reporter who acts as member of the press to inform citizens on the happenings of their government.

2. Defendant Office of the Governor is as public body as defined in NMSA 1978, §41-4A-2 who is sued for damages and injunctive relief against its employees from taking further actions that interfere with Plaintiff's rights protected by the New Mexico Bill of Rights.

3. Defendant Michelle Lujan Grisham is the Governor of New Mexico who is sued pursuant 42 U.S.C.A. §1983 for declaratory and injunctive relief under for actions taken individually under the color of law.

4. Defendant Patrick Allen is the Secretary of the New Mexico Department of Health who is sued for declaratory and injunctive relief for actions taken individually under the color of law.

5.    Defendant Office of the Governor is as public body as defined in NMSA 1978, §41-4A-2 who is sued for damages and injunctive relief against its employees from taking further actions that interfere with Plaintiff's rights protected by the New Mexico Bill of Rights.

6.    The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1983 because, Plaintiffs allege a current and imminent continuing violation of their rights under the laws and Constitution of the United States. Additionally, the Court in its discretion may exercise pendant jurisdiction to address claims arising under the state law of New Mexico, specifically NMSA § 41-4A-1 *et. seq.*

7.    The Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. § 2201 because this action presents an actual controversy within the Court's jurisdiction.

8.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b). All Defendants are residents of and/or perform their official duties in this district. In addition, all of the events giving rise to the claims in this Complaint arose in this district.

## GENERAL ALLIGATIONS

8.    Plaintiff is an independent investigative journalist who produces content intended to expose to the general public cases of government fraud, waste, and abuse.

9.    On September 12, 2023, Plaintiff engaged in expressive conduct by openly carry his firearm on a traditional public forum in Albuquerque New Mexico in support of the Second Amendment to the United States Constitution.

10.    Plaintiff displays the content described in Paragraphs 8 on 9 above on a YouTube channel he operates called James Freeman.

11.     Approximately 444,000 people around the world subscribe to and enjoy Plaintiff's YouTube channel called James Freeman.

12.     The content Plaintiff posts on his YouTube channel and on other social media platforms often receives tens of thousands of views and frequently sparks robust debate about matters of public interest related to constitutional rights, the workings of government and other related matters.

13.     On September 12, 2023, while engaged in protest and exercising his right to bear arms protected by the US and NM Constitutions, Plaintiff became engaged in an encounter with New Mexico State Police officers who directed him that his conduct was in violation of the Governor's public health order and would result in a civil citation for  him at some undesignated time in the future for his exercise of speech and bearing arms.

14.     This citation that was threatened for lawful bearing of arms and speech to be issued pursuant to Public Health Order entitled "Public Health Emergency Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures" signed by Patrick M. Allen in his official capacity as the Secretary of the New Mexico Department of Health on September 8, 2023 (hereinafter "PHO," attached here as Exhibit 1).

15.     Paragraph (1) (A) to (E) on pages 1 to 2 of the PHO state:

No person, other than a law enforcement officer or licensed security officer, shall possess a firearm, as defined in NMSA 1978, Section 30-7- 4.1, either open carry or concealed, within cities or counties averaging 1,000 or more violent crimes per 100,000 residents per year since 2021 according to Federal Bureau of Investigation's Uniform Crime Reporting Program AND more than 90 firearm-related emergency department visits per 100,000 residents from July 2022 to June 2023 according to New Mexico Department of Public Health, except:

A.      On private property owned or immediately controlled by the person;
B.      On private property that is not open to the public with the express permission of the person who owns or immediately controls such property;

C.      While on the premises of a licensed firearms gunsmith for the purpose of lawful transfer or repair of a firearm;

D.      In the event that Plaintiff is to appear at the location described above in Paragraph 13, the Administrative Order attached hereto as Exhibit "1" requires that Plaintiff is escorted by and accompanied by the Torrance County Sheriff's Office while in the building.

E.      While engaged in the legal use of a firearm at a properly licensed firing range or sport shooting competition venue; or

F.      While traveling to or from a location listed in Paragraphs (1)through (4) of this section; provided that the firearm is in a locked container or locked with a firearm safety device that renders the firearm inoperable, such as a trigger lock.

16.     Aside from the four locations listed on pages 1-2 and paragraphs (1)(A) to (1)(D) of the PHO, ordinary, law-abiding citizens are prohibited from bearing arms for self-defense in otherwise non-sensitive public places by the PHO and the Executive Order 2023-130 (attached here as Exhibit 2).

17.     At all times related to this complaint, Patrick M. Allen was employed by the New Mexico Department of Health, and was acting on behalf of, under color of or within the course and scope of the authority of the New Mexico Department of Health.

18.     On September 7, 2023, Michelle Lujan Grisham, in her individual capacity and also in her official capacity as the Governor of New Mexico, made the PHO possible by signing Executive Order 2023-130; an Executive Order declaring a public health emergency due, in part, to criminal gun violence and directed the Secretary of the New Mexico Department of Health, Patrick M. Allen, to collaborate with the Governor's Office to provide "an effective and coordinated response to this public health emergency." *See* Executive Order 2023-130, p. 2, ¶ 1.

19.     In addition, Michelle Lujan Grisham, in her individual capacity and in her official capacity as the Governor of New Mexico, ordered and directed that all "political subdivisions of the State shall comply with and enforce all directives issued pursuant to this Order." *See* Executive Order 2023-130, p. 3, ¶ 4.

20.     On September 7, 2023, Executive Order 2023-130 went into effect "immediately" and is to remain in effect "until October 6, 2023." *See* Executive Order 2023-130, p. 3, ¶1.

21.     At all relevant times related to this verified complaint, Michelle Lujan Grisham was the current occupant of the Office of the Governor for the State of New Mexico, and acting on behalf of, under color of or within the course and scope of the authority of the Office of the Governor of New Mexico.

22.     While the goal of enhancing public health is laudable, the methodology employed by the orders at the heart of this case and signed by New Mexico's highest State officials violate the clearly established constitutional rights of individuals, like James Springer, who live and work in locations effected by these orders, such as Albuquerque, New Mexico.

23.     These orders effectively eviscerate the rights of citizens who desire to lawfully exercise their Second Amendment right to bear firearms for self-defense outside of their homes without fear of reprisal or punishment by government officials who want to curtail those same constitutional rights including freedom of speech based upon the content of the speech.

24.     The PHO has led to the punishment and reprisal for James Springer as an otherwise law-abiding citizen member of the press and other similarly situated individuals because it clearly states that any "person or entity who willfully violates this Order may be subject to civil administrative penalties available at law." See PHO, p. 3, ¶ 4.

25.     In fact, the Executive Order 2023-130 that Michelle Lujan Grisham signed orders and directs that all "political subdivisions of the State shall comply with and enforce all directives issued pursuant to this Order." See Executive Order 2023-130, p. 3, ¶ 4.

26.     These orders eviscerate the right to carry firearms for self-defense by demanding that any weapon being transported to or from one of the four enumerated places where one can

possess a functioning firearm, see PHO, pp.1-2, ¶ (1)(A)-(D), be transported "in a locked container or locked with a firearm safety device that renders the firearm inoperable, such as a trigger lock," *see* PHO, p. 2, ¶ (1)(E).

27.     These restrictions create an unconstitutional burden on any individual, like Plaintiff James Spring or any other similarly situated individual, who desires to use a firearm to protect themselves from any form of violence or criminal activity while travelling to or from one of the four enumerated locations in the PHO, the only four places where it is permissible hold and fire a functioning firearm withing the prohibited locations outlined in the PHO.

28.     Obviously, having a firearm in a locked box in one's car does not adequately allow one to swiftly exercise one's right to self-defense the way having a loaded firearm on your person provides when an exigent situation demands a rapid defensive use of force.

29.     These orders also unconstitutionally limit the rights of individuals to carry firearms in public places that are not one of the four enumerated locations in the PHO, but yet are not sensitive public places where firearm possession can be lawfully curtailed.

30.     For instance, just last summer the United States Supreme Court clearly and unambiguously held "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *See New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022).

31.     In arriving at this holding, the highest court in our country explicitly stated the "constitutional right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Id*. 142 S. Ct. at 2156 (*citing McDonald v. Chicago*, 561 U.S. 742, 780 (2010)).

32.     The Supreme Court also held that governments could not declare entire cities (or counties for that matter) to be "sensitive places" where "the government may lawfully disarm law-abiding citizens." *Id.*, 142 S. Ct. at 2133.

33.     In fact, our highest court declared that "expanding the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly." *Id.*, 142 S. Ct. at 2134.

34.     The Supreme Court held that there "is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the New York City Police Department." *Id.*, 142 S. Ct. at 2134.

35.     Yet that is precisely what Michelle Lujan Grisham and Patrick M. Allen have attempted to do and have done with Executive Order 2023-130 and the September 8, 2023 PHO: declare large swaths of public areas like the City of Albuquerque and other cities and counties in New Mexico to be areas where law abiding citizens are disarmed despite having violated no other law.

36.     Such governmental action is prohibited in our Republic.

37.     Under our constitutional structure, the right of individuals, like James Springer, to "wear, bear, or carry upon the person or in the clothing or in a pocket, for purposes of being armed and ready for offensive or defensive action in case of a conflict with another person" is a right guaranteed under the Second Amendment. *Id.* 142 S. Ct. at 2134 (internal ellipses omitted).

38.     Michelle Lujan Grisham and Patrick M. Allen violated the clearly established constitutional rights of Plaintiff by unlawfully executing Executive Order 2023-130 and the September 8, 2023 PHO; orders seeking to prevent law-abiding citizens from bearing arms.

39.     These individuals, despite whatever public health goals they may have had, intentionally violated their formal oaths of office to uphold the constitution and laws of the United States when instituting these unconstitutional restrictions on a law-abiding citizen's right to bear arms in clear violation of the criminal prohibition provided for in 18 USCA §242.

40.     These individual Defendants, under the guise of official government action and using the color of state law, sought to limit the historical right to bear arms for self-defense in non-sensitive public places in New Mexico. Under the PHO, for instance, "any person who willfully violates this Order may be subject to civil administrative penalties available at law." See PHO, p. 3, ¶ 4.

41.     The penalties outlined in the PHO and suffered by Mr. Springer are unconstitutional.

42.     The issue in this case is a pure legal issue addressing the constitutionality of the PHO and Executive Order 2023-130.

43.     This Court can lawfully issue an ex parte temporary restraining order under Fed. R. Civ. P. 65(b) without notice to an opposing party when "specific facts in" a "verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

44.     In this case, Plaintiff James Springer is and has been irreparably injured by Executive Order 2023-130 and the September 8, 2023 PHO because those orders declare that he, as well as other law abiding citizens, cannot carry a firearm for self-defense in the City of Albuquerque, as well as other unknown and publicly undiscernible locations, when travelling in

ordinary non-sensitive public places; those orders also unlawfully threaten to punish him and other similarly situated individuals for doing so.

45.     The injury to Plaintiff James, and the irreparable damage to his constitutional right to bear arms for self-defense in non-sensitive public places, is current and ongoing, as it is for other similarly situated individuals.

46.     Plaintiff James Springer has suffered the indignity or consequence of being punished by State officials for exercising his constitutionally guaranteed right to bear firearms in self-defense in non-sensitive public places because the individual Defendants, who are acting under the color of state law, whether they are acting in their official or individual capacity, are reaching far beyond their limited powers by limiting the right to bear arms and abridging his right to engage in expressive conduct based upon the content of his speech.

47.     The irreparable injury to Plaintiff James Springer and others similarly situated is real and concrete having occurred that this Court is well within its right to issue an *ex parte* emergency temporary restraining order enjoining the implementation of Executive Order 2023-130 and the September 8, 2023 PHO as far as those orders limit the Second Amendment rights guaranteed to Plaintiff James Springer and others similarly situated.

48.     Tellingly, Sam Bregman, who has been appointed as both the District Attorney for the Second Judicial District in Albuquerque and as the Chairman of New Mexico's Organized Crime Commission by Governor Michelle Lujan Grisham, has commented on these orders as follows: "As an officer of the court, I cannot and will not enforce something that is clearly unconstitutional."[2]

---

[2] *See* https://www.huffpost.com/entry/albuquerque-guns-new-mexico_n_64fd382fe4b043f73bc10a3e

49.     More tellingly, New Mexico's Attorney General, Raul Torrez, has issued a formal letter to Governor Lujan Grisham, condemning her actions as unconstitutional.[3]

50.     In short, the unconstitutionality of these orders is widely accepted and should not be tolerated by the Court.

### COUNT I: VIOLATION OF THE RIGHT TO BEAR ARMS– 42 U.S.C. § 1983

51.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

52.     Defendants did author and sign official government proclamations that made and make it possible for other state officials to unconstitutionally punish Plaintiff James Springer and others similarly situated for carrying firearms for self-defense in non-sensitive public places.

53.     Defendants did attempt and have unconstitutionally deprived Plaintiff James Springer of his constitutional right to bear arms in public by authoring and signing Executive Order 2023-130 and the September 8, 2023 PHO.

54.     Plaintiff James Springer has been and continues to be irreparably harmed by those public orders, signed by individuals acting under the color of state law as well as in their official capacities.

55.     Given the state of clearly established constitutional law on the issue of bearing arms in non-sensitive public places as articulated by our Supreme Court, Plaintiff James Springer and situated have shown a clear and unequivocal right to have their right to bear arms in public restored and Executive Order 2023-130 and the September 8, 2023 PHO declared unconstitutional as it applies to their right to bear arms.

56.     Defendants, acting individually under the color of state law, as well as in their official capacities, attempted to cause and/or caused Plaintiff James Springer and others similarly

---

[3] *See* https://drive.google.com/file/d/1kaLVreNK409FizA8BV8c8qO8etGMOoet/view

situated to be deprived of their constitutional right to bear arms in non-sensitive public places for the purpose of self-defense under the Second Amendment as applied to the State of New Mexico under the Fourteenth Amendment, in violation of 42 U.S.C. § 1983.

**COUNT II: VIOLATION OF FREEDOM OF THE PRESS AND SPEECH - VIEWPOINT DISCRIMINATION – 42 U.S.C. § 1983**

57.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

58.     The First Amendment of the United States Constitution protects an individual's freedom of expression/freedom of speech and the individual's right to petition their government for redress, moreover the First Amendment prohibits infringement on the freedom of the press to report on the affairs of government by the government.

59.     As a government actors, individually, acting under the color of law, Defendants issued orders that prevent the expressive conduct of openly bearing arms in support of the rights of citizens to bear arms and engaged in viewpoint discrimination by making such conduct subject to the pain of civil administrative penalty.

60.     As a direct and proximate result of the punitive actions, Plaintiff suffered injuries consisting of deprivation of a Constitutional Right, Plaintiff seeks declaratory relief and injunctive relief to halt the continuation of these deprivations.

**COUNT III: VIOLATION OF N.M. CONST. ART. II, § 6, and ART. II, §17 (ONLY AS TO THE DEFENDANTS OFFICE OF THE GOVERNOR AND DEPARTMENT OF HEALTH)**

61.     Plaintiff herein incorporates all the foregoing paragraphs.

62.     Defendants Office of the Governor and Department of Health violated Plaintiff's constitutional rights of to bear arms and freedom of speech when that Defendants entered the Executive Order and PHO at issue here.

63.     Defendants' orders prohibit the bearing of arms protected by  N.M. CONST. ART. II, § 6.

64.     Defendants' orders prohibit the free exercise of speech protected by  N.M. CONST. ART. II, § 17 by discriminating against expressive conduct on the basis that it is content supportive of the right to bear arms.

65.     Because the Defendants acting through their agents have violated Plaintiff's rights protected by the Bill of Rights of the New Mexico Constitution with disregard for the harm it would cause Plaintiff, the Plaintiff is entitled to judgement establishing that his rights were violated and for actual damages associated to those violations as well as attorney's fees and costs.

## JURY DEMAND

Plaintiffs request a trial by a jury of twelve (12) persons.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs demand judgment in their favor, against Defendants jointly and severally, and seek relief as follows:

(1)     a Declaratory Judgment that issuance and enforcement of the Executive Order and the PHO is unconstitutional for the reasons stated herein, and that the actions of the individual Defendants were unlawful and unconstitutional;

(2)     a Declaratory Judgment that the actions of the Defendants through its employees violated Plaintiff's rights protected by the New Mexico Bill of Rights;

(3)     for an award of actual damages against the Office of the Governor and the Department of Health under the New Mexico Civil Rights Act;

(4)     a temporary restraining order to prohibit individual Defendants from enforcing the orders at issue, issuing any further orders or taking any action to ban or exclude

Plaintiff from exercising his rights to speech or to bear arms;

(5)     a preliminary and permanent injunction to prohibit Defendants from enforcing the

orders or promulgating new ones that prohibit Plaintiff from speech in support of

the right to bear arms or to bear arms;

(6)     award of costs and expenses, including reasonable attorneys' fees under 42 U.S.C.

§ 1988 and NMSA 1978, §41-4A-3; and,

(7)     such other relief as this Court deems appropriate.

## REQUEST FOR TEMPORARY RESTRAING ORDER

### Plaintiff Has a Liberty Interest in Freedom of Speech, Freedom of the Press and to Petition the Government for Redress That Requires Due Process of Law Before He is Deprived of Liberty.

Plaintiff has a liberty interest in bearing arms protected by the Second Amendment and in

activities protected by the First Amendment to speech, and the Orders at issue in this lawsuit most

certainly runs afoul of those protections.

### A Temporary Restraining Order is Necessary to Prevent Irreversible Harm

Unless the Court enters this Temporary Restraining Order and Preliminary Injunction,

Plaintiff will cut off from exercising his rights in any sort of significant way in a number of

locations in Torrance County.

**I.      Standards for Issuance of a Preliminary Injunction**

A movant may obtain a preliminary injunction if: (1) the movant will be irreparably

injured by denial of the relief; (2) the movant's injury outweighs any damage the injunction

may cause the opposing party; (3) granting the preliminary relief would not be adverse to the

public interest; and (4) there is a substantial likelihood of success on the merits. *Keirnan v.*

*Utah Transit Auth.,* 339 F.3d 1217, 1220 (10th Cir. 2003) (citation omitted). For the reasons

that follow, the standards for granting a temporary and preliminary injunction have been met in this case.

## II.      Plaintiffs are Likely to Succeed on the Merits.

### A.   *Defendants' Orders prohibit the exercise of the fundamental liberty to bear arms in self-defense and are viewpoint discrimination in violation the First Amendment and the corresponding New Mexico Constitution provisions in the Bill of Rights.*

To determine whether a government act violates the substantive component of the Due Process Clause, courts begin by determining the proper level of scrutiny to apply for review. "Even though citizens of statutory counties are not a suspect class, we will still apply strict scrutiny if the state's classification burdens the exercise of a fundamental right guaranteed by the U.S. Constitution. *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002). An act passes strict scrutiny only if it "narrowly tailored to further a compelling government interest." *Id.* "If no heightened scrutiny applies, the statute need only be rationally related to a legitimate government purpose." *Id.* "In deciding whether to recognize additional classifications as suspect, courts traditionally look to see if the classification is 'based on characteristics beyond an individual's control,'[] and whether the class is 'saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.'" *Id.* (citations omitted). Here, Plaintiff's fundamental rights protected by the First Amendment are clearly abridged and he was afforded no notice or opportunity to address the abridgment of those liberties. Moreover, the Order clearly violate the rights affirmed in *Bruen* and cannot satisfy the test the Supreme Court set forth in that case making Plaintiff likely to succeed on the merits.

## III.     The Plaintiff Will Suffer Irreparable Injury if Injunctive Relief Is Denied

The loss of [constitutional] freedoms, *for even minimal periods of time*, unquestionably

constitutes irreparable injury." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003) (*quoting Elrod v. Burns*, 427 U.S. 347, 373 (1976)) (emphasis added); Banning Plaintiff from Courthouse, excluding him from public hearings and denying him public services unquestionably deprives him of his ability speak freely, publish in the press and to petition his government for redress. There is no adequate legal remedy for these "intangible harms." *Cmty. Television of Utah, LLC v. Aereo, Inc.*, 997 F. Supp. 2d 1191, 1210 (D. Utah 2014) ("Rather, the court looks to intangible harms that are difficult to quantify when it determines whether irreparable harm warrants a preliminary injunction). Moreover, deprivation of constitutionally protected rights—including the rights to due process and equal protection—inexorably creates irreparable harm. *See Elrod v. Burns* 427 U.S. 347, 373 (1976).; *see also Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) ("When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (citations omitted).

The fact that Due Process, First Amendment and Second Amendment rights are burdened if not outright denied, as they are in this case, establishes the preliminary injunction's "irreparable harm" standard. Thus, under the Tenth Circuit Court of Appeals' jurisprudence, irreparable injury has occurred and will continue to occur until an injunction issues.

## IV.    The Balance of Harms Favors Issuance of Injunctive Relief

Plaintiff has established both likelihood of success on the merits as well as a clear irreparable injury. In addition, the balance of harms tips decidedly in favor of Plaintiff. In the Tenth Circuit, "the [government's] potential harm must be weighed against [plaintiffs'] actual [constitutional] injury." *Summum v. Pleasant Grove City*, 483 F.3d 1044, 1056 (10th Cir. 2007) *rvs'd other grounds by* 555 U.S. 460 (2009). Where the government's perception of harm is speculative (if not outright nonexistent) such speculative harm cannot outweigh an injury to the

Due Process and First Amendment rights of a Plaintiff who has established a substantial likelihood of success on the merits.

If preliminary injunctive relief is not granted, and the Court later finds that the challenged laws impermissibly infringe constitutional rights, the Plaintiffs will have suffered irreparable harm. After the fact, this Court will be unable to make things right again. By contrast, if this Court grants preliminary injunctive relief and later finds against the Plaintiff, the Defendants will not have suffered any hardship. Because the Defendant cannot show any sort of reasonably anticipated harm if an injunction is granted, and the Plaintiffs will suffer certain harm in the absence of injunctive relief, the balance of hardships favors the Plaintiff. When plaintiffs establish that a case raises constitutional issues, as the Plaintiffs have in this case, the Court should presume that the balance of harms tips in their favor. *Sammartano v. First Judicial District Court*, 303 F.3d 959, 973 (9th Cir. 2002).

## V.     An Injunction Is in the Public Interest

Finally, Plaintiff establishes that issuance of a preliminary injunction is in the public interest. The Tenth Circuit Court of Appeals recognizes "it is always in the public interest to prevent the violation of a party's constitutional rights." *Verlo v. Martinez*, 820 F.3d 1113, 1127 (10th Cir. 2016); *citing Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1237 (10th Cir. 2005); *see also Utah Licensed Bev.*, 256 F.3d at 1076; *Elam Constr., Inc. v. Regional Transp. Dist.*, 129 F.3d 1343, 1347 (10th Cir.1997). It is in the public interest to not allow government to ban members of the press from public courthouses and hearings or to deny them the ability to make records request simply because they do not like the content of the speech or press of an individual reporter.

## CONCLUSION

French mathematician and philosopher, Blaise Pascal, stated that *"[j]ustice without force is powerless; force without justice is tyrannical*." This Court should give force to justice and for all the foregoing reasons, Plaintiffs respectfully request this Court grant a Temporary Restraining Order.

Respectfully submitted this 12th day of September 2023.

WESTERN AGRICULTURE, RESOURCE
AND BUSINESS ADVOCATES, LLP

*/s/ A. Blair Dunn*
A. Blair Dunn, Esq.
Jared R. Vander Dussen, Esq.
400 Gold Ave SW, Suite 1000
Albuquerque, NM 87102
(505) 750-3060
abdunn@ablairdunn-esq.com
warba.llp.jared@gmail.com


Zach Cook, LLC

*/s/ Zach Cook*
Zach Cook
1202 Sudderth # 425
Ruidoso, NM 88345
(575) 937-7644
zach@zachcook.com