IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES SPRINGER,

        Plaintiff,

v.

                                       Civil Action No. 1:23-cv-00781-KWR-LF

MICHELLE LUJAN GRISHAM,
OFFICE OF THE GOVERNOR,
PATRICK ALLEN, and
NM DEPARTMENT OF HEALTH,

        Defendants.

## *RENEWED* MOTION FOR PRELIMINARY INJUNCTION UNDER THE GOVERNOR'S MOST RECENT ORDERS

COMES NOW Plaintiff by and through his undersigned counsel of record, and renews his motion for a Preliminary Injunction addressing the October 6, 2023, Public Health Order, EX 1, and for his reasons states:

### BACKGROUND

On October 16, 2023 this Court entered an Order, ECF Doc. No. 9, denying without prejudice Plaintiff's request for a temporary restraining order given that the original Public Health Order (PHO) had been superseded by later editions of the PHO.  This instant motion addresses that most recent Second Amended Public Health Order (SAPHO). Specifically, this Motion targets the provision that:

> No person, other than a law enforcement officer or licensed security officer, or active duty military personnel shall possess a firearm, as defined in NMSA 1978, Section 30-7-4.1, either openly or concealed, in public parks or playgrounds within the City of Albuquerque or Bernalillo County, except in the City of Albuquerque's Shooting Range Park and areas designated as a state park within the state parks system and owned or managed by the New Mexico Energy, Minerals and Natural Resources Department State Parks Division, or the State Land Office.

EX 1 at 2. This Court also admonished in its Order that Plaintiff was required to

1

demonstrate standing to challenge the Second Amended Public Health Order. Plaintiff does so here now. Plaintiff has children that participate in youth sports at the parks at issue in the SAPHO. Under the SAPHO, he is now been forced to attend several of those parks without the benefit of firearms for his own personal defense, or for the defense of his family in the drug and violence riddled city of Albuquerque. *See* EXHIBIT 2, Declaration of James Springer.

## ARGUMENT

### REQUEST FOR PRELIMINARY INJUNCTION

**The Second Amended Public Health Order impermissibly infringes on Plaintiff's Fundamental Liberties protected by the United States and New Mexico Constitutions.**

Plaintiff has a liberty interest in bearing arms protected by the Second Amendment for self-defense in the increasingly dangerous city of Albuquerque and in engaging in activities protected by the First Amendment to speech. The SAPHO currently at issue in this lawsuit most certainly runs afoul of those protections. It runs afoul of those protections by declaring new sensitive places that exceed traditional historical protection for Second Amendment activity in these locations and prohibits expressive conduct in traditional public forums based upon the content of the speech.

### Standards for Issuance of a Preliminary Injunction

A movant may obtain a preliminary injunction if: (1) the movant will be irreparably injured by denial of the relief; (2) the movant's injury outweighs any damage the injunction may cause the opposing party; (3) granting the preliminary relief would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. *Keirnan v. Utah Transit Auth.,* 339 F.3d 1217, 1220 (10th Cir. 2003) (citation omitted).

For the reasons that follow, the standards for granting a temporary and preliminary

injunction have been met in this case.

## I. A Temporary Restraining Order is Necessary to Prevent Irreversible Harm

Unless the Court enters a Preliminary Injunction, Plaintiff will continue to suffer the loss of carrying firearms for self-defense in public parks and playgrounds. *See* EX 2. Moreover, Plaintiff is a staunch advocate of the First Amendment and commonly organizes or attends protests in traditional public forums. Plaintiff plans to organize or attend protests at Civic Plaza (a traditional public forum commonly used for expressive conduct such as protests or political rallies) in downtown Albuquerque for the express purpose of voicing support for the right to bear arms for self-defense by openly carrying firearms in self-defense as well as for the purpose of expressing support for gun possession and carrying of firearms an important right for law-abiding citizens.

## II. Plaintiffs are Likely to Succeed on the Merits.

### A. *Defendants' Orders prohibit the exercise of the fundamental liberty to bear arms in self-defense and are viewpoint discrimination in violation the First Amendment and the corresponding New Mexico Constitution provisions in the Bill of Rights.*

As this Court has noted, in *Bruen,* the United States Supreme Court has adopted a two-step test to determine whether a restriction violates the Second Amendment. *Id.* at 2129-30. In the first step, the court must determine "whether the Second Amendment's plain text covers an individuals' conduct." If it does, "the Constitution presumptively protects that conduct." *Id.* at 2130. In the second step, "the government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* Only if the government makes such a showing "may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.* As the Supreme Court also noted, it is Plaintiff's burden to demonstrate a substantial likelihood that the Government's regulation is inconsistent with the Nation's historical tradition of firearm regulation.

In this instance, the historical tradition of firearm regulation at issue concerns the addition of new sensitive places, beyond the scope of what the New Mexico Legislature has traditionally regulated. And once again, the *Bruen* analysis is enlightening for this instant matter. The Supreme Court's rejection of New York's argument regarding sensitive places lays out that where New York viewed:

> "sensitive places" where the government may lawfully disarm law-abiding citizens [to] include all "places where people typically congregate and where law-enforcement and other public-safety professionals are presumptively available." Brief for Respondents 34. It is true that people sometimes congregate in "sensitive places," and it is likewise true that law enforcement professionals are usually presumptively available in those locations. But expanding the category of "sensitive places" simply to all places of public congregation that are not isolated from law enforcement defines the category of "sensitive places" far too broadly. Respondents' argument would in effect exempt cities from the Second Amendment and would eviscerate the general right to publicly carry arms for self-defense that we discuss in detail below.

*Bruen* at 2133–34. The Supreme Court in *Bruen* also cited favorably D. Kopel & J. Greenlee, The "Sensitive Places" Doctrine, 13 Charleston L. Rev. 205, 229–236, 244–247 (2018) which supports that the SAPHO's *ban* on the carrying of firearms in public parks and playgrounds is outside of the historical tradition of firearm regulation. Importantly, Kopel and Greenlee's research supports that "*Heller's* mention of 'longstanding' laws against carrying guns in 'schools' or 'government buildings' has modest support in history and tradition. As of the 1930s, several states had broad laws against guns in schools. A larger number of states had laws against arms at polling places. But these were the minority approach. Widespread bans on arms in government buildings or schools came in the later part of the twentieth century." *Id*. at 263.

Here in New Mexico, where we live, the Legislature has specifically defined school premises for purposes of banning firearms in those *sensitive places* in a matter that excludes the parks and playgrounds that the SAPHO now seeks to criminalize for the carrying of firearms for

protection. *See* NMSA 1978 § 30-7-2.1 [1]  Arguably, the SAPHO seeks to ban (*not regulate...ban*) the carrying of firearms on grounds that are not those of a public elementary, junior high or high school, or public grounds where school related or school sanctioned activities are then being performed. Thus, the regulation goes beyond what even the New Mexico Legislature has traditionally regulated, and must find support somewhere else in our Nation's traditional firearm regulation.

Once again, the analysis supports the conclusion that Plaintiff is likely to succeed on the merits. The most analogous case to the instant situation is *Morris v. U.S. Army Corps of Eng'rs*, 60 F. Supp. 3d 1120 (D. Idaho 2014).  And again, the analysis of Kopel and Greenlee's law review article is persuasive, stating:

> Nor was the District Court of Idaho persuaded by the sensitive places argument.[]
> "The Corps argues that its recreation sites are public venues where large numbers of people congregate, making it imperative that firearms be tightly regulated. The Corps also points out that the sites contain dams and power generation facilities that require heightened protection, especially given homeland security threats."[265]
> But the court pointed out that *Heller* "limited the 'sensitive place' analysis to facilities like 'schools and government buildings.' In contrast, the ban imposed by the Corps applies to outdoor parks."[]
> Moreover, the sensitive places language from *Heller* "confirms the right of the Corps to regulate handguns on its property. But here the Corps is attempting to ban handguns, not regulate them."[] Thus, "[w]hile the Corps retains the right to regulate the possession and carrying of handguns on Corps property, this regulation imposes an outright ban, and is therefore unconstitutional under any level of scrutiny."

---

[1]  B. As used in this section, "school premises" means:
(1) the buildings and grounds, including playgrounds, playing fields and parking areas and any school bus of any public elementary, secondary, junior high or high school in or on which school or school-related activities are being operated under the supervision of a local school board; or
(2) any other public buildings or grounds, including playing fields and parking areas that are not public school property, in or on which public school-related and sanctioned activities are being performed.

*Id.* at 275. Here, Plaintiff (a law-abiding citizen) wishes to carry firearms in parks and playgrounds that are not school grounds, and are not public grounds that are not being used for school related or sanctioned activities. But, an outright *ban* prohibits him from doing so without the threat of prosecution by law enforcement. Thus, Plaintiff is substantially likely to succeed on the merits of claims. And there is no citable source of law that supports the notion that there was ever any historical tradition of firearm regulation on public parks and playgrounds in the Eighteenth or Nineteenth centuries in this Country. Nor is there even a hint of historical tradition of doing so in our State of New Mexico in the Twentieth century. And it's worth noting that, even if the Court were to apply some sort oof means-end scrutiny, there is no reliable evidence that banning the carrying of firearms by law abiding citizens for protection in public parks or playgrounds would have the necessary positive impact on the compelling government interest in curbing gun violence.[2]

As it relates to the claim by the Plaintiff that SAPHO infringes upon his expressive conduct in a traditional public forum on the basis of content, to determine whether a government act violates the substantive component of the Due Process Clause, courts begin by determining the proper level of scrutiny to apply for review. "Even though citizens of statutory counties are not a suspect class, we will still apply strict scrutiny if the state's classification burdens the exercise of a fundamental right guaranteed by the U.S. Constitution. *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002).

Here with regard to the infringement upon Plaintiff's First Amendment expressive conduct in traditional public forum, the SAPHO passes strict scrutiny only if it "narrowly tailored to further a compelling government interest." *Id.* Instead, Plaintiff's fundamental rights protected by the First

---

[2] *See* https://www.rand.org/research/gun-policy/analysis/gun-free-zones.html

Amendment are clearly abridged as all citizens are banned from engaging in this particular expressive conduct in these traditional public forums and he was afforded no notice or opportunity to address the abridgment of those liberties. Moreover, these restrictions are content based with zero evidence (as noted above) that that they will achieve a compelling government interest that would withstand strict scrutiny.

### III.     The Plaintiff Will Suffer Irreparable Injury if Injunctive Relief Is Denied

"The loss of [constitutional] freedoms, *for even minimal periods of time*, unquestionably constitutes irreparable injury." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003) (*quoting Elrod v. Burns*, 427 U.S. 347, 373 (1976)) (emphasis added); Banning Plaintiff from carrying arms for his and his family's protection at public parks and playground in the dangerous city of Albuquerque represents an unquestionable loss of that liberty interest, and the SAPHO's conversion of traditional public forums such as Civic Plaza, unquestionably deprives him of his ability speak freely and publish in the press based upon the content of the speech he wishes to engage in a traditional public forum. There is no adequate legal remedy for these "intangible harms." *Cmty. Television of Utah, LLC v. Aereo, Inc.*, 997 F. Supp. 2d 1191, 1210 (D. Utah 2014) ("Rather, the court looks to intangible harms that are difficult to quantify when it determines whether irreparable harm warrants a preliminary injunction). Moreover, deprivation of constitutionally protected rights—including the rights to due process and equal protection—inexorably creates irreparable harm. *See Elrod v. Burns* 427 U.S. 347, 373 (1976).; *see also Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) ("When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (citations omitted).

The fact that Due Process, First Amendment and Second Amendment rights are burdened

if not outright denied, as they are in this case, establishes the preliminary injunction's "irreparable harm" standard.  Thus, under the Tenth Circuit Court of Appeals' jurisprudence, irreparable injury has occurred and will continue to occur until an injunction issues.

### IV.     The Balance of Harms Favors Issuance of Injunctive Relief

Plaintiff has established both likelihood of success on the merits as well as a clear irreparable injury. In addition, the balance of harms tips decidedly in favor of Plaintiff. In the Tenth Circuit, "the [government's] potential harm must be weighed against [plaintiffs'] actual [constitutional] injury." *Summum v. Pleasant Grove City*, 483 F.3d 1044, 1056 (10th Cir. 2007) *rvs'd other grounds by* 555 U.S. 460 (2009). Where the government's perception of harm is speculative (if not outright nonexistent) such speculative harm cannot outweigh an injury to the Due Process,  First Amendment and Second Amendment rights of a Plaintiff who has established a substantial likelihood of success on the merits.

If preliminary injunctive relief is not granted, and the Court later finds that the challenged laws impermissibly infringe constitutional rights, the Plaintiffs will have suffered irreparable harm. After the fact, this Court will be unable to make things right again. By contrast, if this Court grants preliminary injunctive relief and later finds against the Plaintiff, the Defendants will not have suffered any hardship. Because the Defendant cannot show any sort of reasonably anticipated harm if an injunction is granted, and the Plaintiffs will suffer certain harm in the absence of injunctive relief, the balance of hardships favors the Plaintiff. When plaintiffs establish that a case raises constitutional issues, as the Plaintiffs have in this case, the Court should presume that the balance of harms tips in their favor. *Sammartano v. First Judicial District Court*, 303 F.3d 959, 973 (9th Cir. 2002).

## V.     An Injunction Is in the Public Interest

Finally, Plaintiff establishes that issuance of a preliminary injunction is in the public interest. The Tenth Circuit Court of Appeals recognizes "it is always in the public interest to prevent the violation of a party's constitutional rights." *Verlo v. Martinez*, 820 F.3d 1113, 1127 (10th Cir. 2016); *citing Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1237 (10th Cir. 2005); *see also Utah Licensed Bev*., 256 F.3d at 1076; *Elam Constr., Inc. v. Regional Transp. Dist*., 129 F.3d 1343, 1347 (10th Cir.1997). It is in the public interest to not allow government to ban members of the press from public courthouses and hearings or to deny them the ability to make records request simply because they do not like the content of the speech or press of an individual reporter.

## **CONCLUSION**

French mathematician and philosopher, Blaise Pascal, stated that *"[j]ustice without force is powerless; force without justice is tyrannical*." This Court should give force to justice and for all the foregoing reasons, Plaintiffs respectfully request this Court grant a Temporary Restraining Order and issue a preliminary injunction .

Respectfully submitted this 26th day of October 2023.

                                          WESTERN AGRICULTURE, RESOURCE
                                          AND BUSINESS ADVOCATES, LLP

                                          */s/ A. Blair Dunn*
                                          A. Blair Dunn, Esq.
                                          Jared R. Vander Dussen, Esq.
                                          400 Gold Ave SW, Suite 1000
                                          Albuquerque, NM 87102
                                          (505) 750-3060
                                          abdunn@ablairdunn-esq.com
                                          warba.llp.jared@gmail.com


                                          Zach Cook, LLC

>*/s/ Zach Cook*
>Zach Cook
>1202 Sudderth # 425
>Ruidoso, NM 88345
>(575) 937-7644
>zach@zachcook.com

CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2023, I filed the foregoing via the CM/ECF causing all parties of record to be served electronically.

*/s/ A. Blair Dunn*
A. Blair Dunn, Esq.