IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JAMES SPRINGER,**

        **Plaintiff,**

**v.**

                                   **Civil Action No. 1:23-cv-00781-KWR-LF**

**MICHELLE LUJAN GRISHAM,**
**OFFICE OF THE GOVERNOR,**
**PATRICK ALLEN, and**
**NM DEPARTMENT OF HEALTH,**

        **Defendants.**

**REPLY IN SUPPORT OF *RENEWED* MOTION FOR PRELIMINARY**
**INJUNCTION UNDER THE GOVERNOR'S MOST RECENT ORDERS**

COMES NOW Plaintiff by and through his undersigned counsel of record, and respectfully offers his reply in support of his renewed motion for a Preliminary Injunction addressing the October 6, 2023, Public Health Order, and for his reasons states:

**INTRODUCTION**

It is intriguing to observe the contortions of anti-Second Amendment politicians as they attempt to justify disarming law-abiding citizens. They must of course ignore the obvious realities concerning the data that these policies do not actually have any track record of delivering the desired compelling government interest in curbing gun violence.[1] And, again without providing any evidence that making schools gun free sensitive zones has reduced gun violence against children, they continue to preach about this being about protecting children, like we do in a closed environment of schools versus in a park or playground wide open to any criminal, while ignoring the obvious and severe risk of harm that this places on law-abiding parents of not being able to protect those children from the enhanced risks in

---

[1] https://www.rand.org/research/gun-policy/analysis/gun-free-zones.html

1

Bernalillo County.  A more circular and disingenuous argument is hard to comprehend, unless the Court considers the real goal of the Defendants – *a gun free country* where law abiding citizens are disarmed.

In keeping with this circularity, Defendants make an argument about Mr. Springer's standing that requires little analysis to find to be utterly lacking in merit.  They acknowledge that Mr. Springer has suffered an injury previously, but defying logic argue that Mr. Springer, who has filed a lawsuit, provided two declarations discussing that he has *previously carried* in Albuquerque and has asked for an injunction against the SAPHO so that he can carry in Albuquerque in the future without fear of criminal penalty has not alleged that he intends to return to Albuquerque's parks and playgrounds *in the future*.

All told, the Response of the Defendants asks this Court to ignore the obvious favorably cited precedent and secondary sources from *Bruen* in favor of weighing in ideologically with Judge Urias in *We the Patriots* and the Maryland District Court in *Maryland Shall Issue*. The Response asks the Court to analogize that parks and playgrounds are like schools simply because a vulnerable population is present and then to ignore that with none of other safeguards in place for these sensitive areas, such as security guards, fencing, locked doors and limited avenues for entrance, that the children will be better protected from a criminal carrying a gun intending or willing to do harm by disarming their parents. A more nonsensical analogy cannot be achieved which is likely why the *Bruen* court did not even begin to buy it when New York advanced those type of arguments.

Finally and tellingly, the Defendants dance around the attempt by Albuquerque to engage in the regulation of the carrying of firearms in parks and playgrounds (like Civic Plaza where the City of Albuquerque installed playground equipment as the Defendants very well

know) as being dispositive of a lack of injury because it is already prohibited, but, also, as the Defendants know the New Mexico Constitution is very clear that "[n]o municipality or county shall regulate, *in any way*, an incident of the right to keep and bear arms." N.M. Const. art. II, § 6.  If the City of Albuquerque's regulation from 2019[2] and 2020[3] were constitutionally valid and effective at achieving the same stated goal of the Defendants to curb gun violence, then surely between 2019 and the issuance of the SAPHO, gun violence should have diminished, making the actions of the Defendants wholly redundant.

## ARGUMENT

### I. Plaintiffs are Likely to Succeed on the Merits.

#### A. *Schools are Not a Proper Analogue to Playgrounds and Parks*

As this Court has noted, in *Bruen,* the United States Supreme Court has adopted a two-step test to determine whether a restriction violates the Second Amendment. *Id.* at 2129-30. In the first step, the court must determine "whether the Second Amendment's plain text covers an individuals' conduct." If it does, "the Constitution presumptively protects that conduct." *Id.* at 2130. In the second step, "the government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* Only *if the government* makes such a showing "may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.*  As the Supreme Court also noted, it is Plaintiff's burden to demonstrate a likelihood that the Government's regulation is inconsistent with the Nation's historical tradition of firearm regulation.

As was noted in the Motion, but bearing repeating here, the Supreme Court's rejection of New York's argument regarding sensitive places lays out that where New York viewed:

---

[2] *See* EX 1 attached hereto
[3] *See* EX 2 attached hereto

> "sensitive places" where the government may lawfully disarm law-abiding citizens [to] include all "places where people typically congregate and where law-enforcement and other public-safety professionals are presumptively available." Brief for Respondents 34. It is true that people sometimes congregate in "sensitive places," and it is likewise true that law enforcement professionals are usually presumptively available in those locations. But expanding the category of **"sensitive places" simply to all places of public congregation that are not isolated from law enforcement defines the category of "sensitive places" far too broadly.** Respondents' argument would in effect exempt cities from the Second Amendment and would eviscerate the general right to publicly carry arms for self-defense that we discuss in detail below.

*Bruen* at 2133–34 (emphasis added). In essence, Defendants argue in their Response for a corollary expansion nearly identical to what New York argued in *Bruen,* that anywhere children congregate as a vulnerable population can be made into a sensitive place. This is essentially same argument that the Maryland District Court accepted and agreed with to find there was no reason to distinguish between public and private schools, as well as between levels of schools from daycare to college in *Maryland Shall Issue, Inc. v. Montgomery Cnty., Maryland*, 2023 WL 4373260, at *9 (D. Md. July 6, 2023). But, here, different from *Maryland Shall Issue*, and more in line with the *Bruen* analysis noted above, there is not a homogenous population of children or young adults present for learning at the parks and playgrounds with access limited for the rest of the adult population so the analogy Defendants make applying *Bruen* must fail.

Again, the Supreme Court in *Bruen* also cited favorably D. Kopel & J. Greenlee, The "Sensitive Places" Doctrine, 13 Charleston L. Rev. 205, 229–236, 244–247 (2018) which supports that the SAPHO's *ban* on the carrying of firearms in public parks and playgrounds is outside of the historical tradition of firearm regulation. Importantly, Kopel and Greenlee's research supports that "*Heller's* mention of 'longstanding' laws against carrying guns in 'schools' or 'government buildings' has modest support in history and tradition. As of the 1930s, several states had broad laws against guns in schools. A larger number of states had laws against arms at polling places.

But these were the minority approach. Widespread bans on arms in government buildings or schools came in the later part of the twentieth century." *Id*. at 263.

And again, if schools are not the proper analogue, then this Court applying *Bruen* should use the correct one.  Playgrounds and parks, in this regard, have much more in common with the recreation area in *Morris v. U.S. Army Corps of Eng'rs*, 60 F. Supp. 3d 1120 (D. Idaho 2014) where children and families intermingle with other members of the public in an unrestricted fashion for leisure rather than learning in schools.   And perhaps, more applicable from the favorably cited Kopel & Greenlee, is the Illinois Supreme Court's decision which finds that there is no applicable analogue that Defendants here can make for parks and playgrounds stating:

> In sum, based on the record, the State provides no evidentiary support for its claims that prohibiting firearms within 1000 feet of a public park would reduce the risks it identifies. Without specific data or other meaningful evidence, we see no direct correlation between the information the State provides and its assertion that a 1000–foot firearm ban around a public park protects children, as well as other vulnerable persons, from firearm violence. The State merely speculates that the proximity of firearms within 1000 feet threatens the health and safety of those in the public park. The lack of a valid explanation for how the law actually achieves its goal of protecting children and vulnerable populations from gun violence amounts to a failure by the State to justify the restriction on gun possession within 1000 feet of a public park.

*People v. Chairez*, 2018 IL 121417, ¶ 54, 104 N.E.3d 1158, 1176.  Importantly, the Illinois Supreme Court was considering and made its decision based upon *Heller* just as the *Bruen* court did in rejecting the New York argument that Defendants seek to make here. Quite simply, Judge Urias and the other District Courts cited by Defendants are engaged in an ideological two-step to try to avoid the obviously correct application of *Bruen* that parks and playgrounds are *not* capable of satisfying the historical requirements to be considered a sensitive place where firearms can be banned here and, thus, Plaintiff is substantially likely to succeed on the merits.

B.  **The SAPHO Bans the Carrying of Firearms in Playgrounds and Parks for <u>All</u> Reasons, Which Includes for the Purpose of Engaging in Protest in Traditional Public Forums**

While it is true that the regulation bans the *possession, either open or concealed*, in parks or playgrounds, it doesn't contemplate persons dispossessing firearms by burning or destroying them in protest at a public park.  In this regard, the Defendants argument is a bit disingenuous because it is clear that the purpose of the regulation serves to limit speech either for or against from a traditional public forum.  This type of argument that the speech is not viewpoint discrimination just because both sides of the debate are restricted has been rejected by Supreme Court stating that "[a]s we have explained, a speech regulation is content based if the law applies to particular speech because of the topic discussed or the idea or message expressed. *Reed v. Town of Gilbert, Ariz.,* 576 U.S. 155, 171, 135 S. Ct. 2218, 2231, 192 L. Ed. 2d 236 (2015). Just because the challenged law discriminates to stop both sides of the argument from speaking on a particular topic does not mean that both sides are not also subjected to viewpoint discrimination based upon an unconstitutional content-based restriction.  Thus, whether it is the person that wants to openly carry firearms as expressive conduct in favor of the continuation of the right or the person that wants to burn guns in support of abolishing the right, a constitutional injury has occurred causing irreparable harm and where the persons are substantially likely to succeed on the merits because there is no evidence that restricting this speech at protests or rallies on the basis of the content will withstand strict scrutiny to find that it achieves a compelling government interest.

Thus, because the ban is not narrowly tailored so as to not infringe upon expressive speech in a public forum, but instead bans firearms for *all* purposes including for the purposes of engaging in protected speech, Plaintiff should be granted an injunction allowing for his expressive speech in these traditional public forums.

### C. The Argument that Plaintiff's Harm is Not Irreparable Harm Just Because it is Speculative is Disingenuous

"The loss of [constitutional] freedoms, *for even minimal periods of time*, unquestionably constitutes irreparable injury." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003) (*quoting Elrod v. Burns*, 427 U.S. 347, 373 (1976)) (emphasis added); Banning Plaintiff from carrying arms for his and his family's protection at public parks and playground in the dangerous city of Albuquerque represents an unquestionable loss of that liberty interest, and the SAPHO's conversion of traditional public forums such as Civic Plaza, unquestionably deprives him of his ability to speak freely and publish in the press based upon the content of the speech he wishes to engage in a traditional public forum. There is no adequate legal remedy for these "intangible harms." *Cmty. Television of Utah, LLC v. Aereo, Inc.*, 997 F. Supp. 2d 1191, 1210 (D. Utah 2014) ("Rather, the court looks to intangible harms that are difficult to quantify when it determines whether irreparable harm warrants a preliminary injunction). Moreover, deprivation of constitutionally protected rights—including the rights to due process and equal protection—inexorably creates irreparable harm. *See Elrod v. Burns* 427 U.S. 347, 373 (1976).; *see also Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) ("When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (citations omitted).

Here, Defendants' argument for taking away fundamental liberty is based upon rank unsubstantiated speculation that banning firearms at playgrounds and parks will curb gun violence at those locations, but such a premise is troubling. It is the responsibility of the government to prove that the stripping away of freedoms is warranted, not the individual to prove that they are likely to have one of their children die if the government takes away firearms that they would have been used in defense of that child's life from a criminal that will disregard this particular law just

7

as they do other laws prohibiting violence against the child.  The sheer audacity of telling law-abiding parents that they are not allowed to protect their children from violence because the government speculates that banning firearms from places where the adult public and children both congregate without restriction will reduce gun violence simply cannot be overstated.

## CONCLUSION

This Court should protect children and their families by protecting the rights of law-abiding parents to protect their children in a very dangerous city and for all the foregoing reasons, Plaintiffs respectfully request this Court grant an issue a preliminary injunction without further evidentiary hearing, which Plaintiff offers is not necessary.

Respectfully submitted this 13th day of November 2023.

WESTERN AGRICULTURE, RESOURCE
AND BUSINESS ADVOCATES, LLP

*/s/ A. Blair Dunn*
A. Blair Dunn, Esq.
Jared R. Vander Dussen, Esq.
400 Gold Ave SW, Suite 1000
Albuquerque, NM 87102
(505) 750-3060
abdunn@ablairdunn-esq.com
warba.llp.jared@gmail.com


Zach Cook, LLC

*/s/ Zach Cook*
Zach Cook
1202 Sudderth # 425
Ruidoso, NM 88345
(575) 937-7644
zach@zachcook.com

9

CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2023, I filed the foregoing via the CM/ECF causing all parties of record to be served electronically.

*/s/ A. Blair Dunn*
A. Blair Dunn, Esq.