IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES SPRINGER,

    Plaintiff,

vs.                                                                                          No. 1:23-cv-00781-KWR-LF

MICHELLE LUJAN GRISHAM,
OFFICE OF THE GOVERNOR,
PATRICK ALLEN, and
NM DEPARTMENT OF HEALTH,

    Defendants.

### DEFENDANTS' EMERGENCY MOTION
### FOR STAY PENDING APPEAL AND CLARIFICATION

Defendants Governor Michelle Lujan Grisham, Secretary Patrick M. Allen, and the New Mexico Department of Health (collectively, "Defendants"), by and through their counsel of record, hereby move for this Court to stay[1] its December 5, 2023, Memorandum Opinion and Order [Doc. 19] to the extent it enjoins enforcement of the public health order while Defendants can pursue an appeal or, alternatively, clarify that the injunction only applies to Plaintiff.[2] In support thereof, Defendants state as follows.

### INTRODUCTION

"Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be *clear and unequivocal*." *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276,

---

[1] To the extent the instant motion convinces the Court to reconsider and reverse its preliminary injunction, Defendants request that relief in lieu of a stay.

[2] Plaintiff opposes this motion.

1281 (10th Cir. 2016) (emphasis added) (cleaned up). Defendants are likely to succeed on appeal both because Plaintiff has failed to establish standing, and because Defendants have presented extensive laws establishing a historical tradition of prohibiting firearms in parks and other gathering-places. Several other district courts (including a court in this district) have found the historical parks laws sufficient to demonstrate a "comparable tradition of regulation." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 27 (2022). And earlier today, the Second Circuit became the first court of appeals to rule on this issue since *Bruen*, holding that New York's firearms prohibition in urban parks was "plainly legitimate." *Antonyuk v. Chiumento*, No. 22-2908, Slip Op. at 183 (2d Cir. Dec. 8, 2023). At the very least, the new decision in *Antonyuk* warrants a stay of the injunction while the Tenth Circuit considers this case.

To the extent the Court was concerned that Defendants had not provided historical laws as exhibits, Defendants hereby rectify the issue by attaching a compilation exhibiting over 100 restrictions on guns in parks as well as a separate compilation of prohibitions at places where people gather. With this supplemented record, Defendants respectfully submit that they have a strong likelihood of succeeding on their appeal of the preliminary injunction sufficient to warrant a stay. Likewise, the equities favor a stay when the Court's order prevents elected officials from enforcing important public safety measures that appear to have little to no continuing impact on Plaintiff. Alternatively, should the Court decline to stay its injunction, it should clarify that the injunction applies only to Plaintiff.

## BACKGROUND

As the Court is familiar with the background of this litigation, Defendants only briefly summarize it. Shortly after a string of tragedies in which children were shot and killed, Governor

Michelle Lujan Grisham issued Executive Order 2023-130 on September 7, 2023, invoking her powers under the All Hazard Emergency Management Act (AHEMA), NMSA 1978, §§ 12-10-1 to -10 (2007), and declaring a state of public health emergency due to gun violence pursuant to the Public Health Emergency Response Act (PHERA), NMSA 1978, §§ 12-10A-1 to -19 (2003, as amended through 2015).[3] The following day, Department of Health Secretary Patrick Allen issued a public health emergency order imposing broad restrictions on the possession of firearms in cities and counties with high levels of gun violence and implementing various other measures meant to reduce gun violence and drug abuse (the "PHO").[4] The PHO was eventually amended to, *inter alia*, remove the original prohibition on the carrying of firearms in Albuquerque and Bernalillo County and replace it with a provision restricting firearms in public parks and playgrounds.[5]

Plaintiff filed suit challenging the PHO primarily on the basis of the Second Amendment. [Doc. 1] The case was originally consolidated with several other lawsuits challenging the PHO and assigned to Judge David Urias. [Doc. 3] However, this specific case was later reassigned to this Court after Plaintiff sought to have Judge Urias recuse himself because Plaintiff's counsel had

---

[3] *Executive Order 2023-130*, Gov. Michelle Lujan Grisham (Sept. 7, 2023), https://www.governor.state.nm.us/wp-content/uploads/2023/09/Executive-Order-2023-130-1.pdf; *Executive Order 2023-132*, Gov. Michelle Lujan Grisham (Sept. 8, 2023), https://www.governor.state.nm.us/wp-content/uploads/2023/09/Executive-Order-2023-132.pdf. The Governor most recently renewed the state of public health emergency on December 1, 2023. *See Executive Order 2023-144*, Gov. Michelle Lujan Grisham (Dec. 1, 2023), https://www.governor.state.nm.us/wp-content/uploads/2023/12/Executive-Order-2023-144.pdf.

[4] *Public Health Order*, N.M. Dep't of Health (Sept. 8, 2023), https://cv.nmhealth.org/wp-content/uploads/2023/09/090823-PHO-guns-and-drug-abuse.pdf.

[5] *Public Health Order*, N.M. Dep't of Health (Sept. 15, 2023), https://cv.nmhealth.org/wp-content/uploads/2023/09/NMAC-EO-2023-130-132-Amended.pdf; Public Health Order, N.M. Dep't of Health (Oct. 6, 2023), https://cv.nmhealth.org/wp-content/uploads/2023/10/NMAC-PHO-20231006-Amended.pdf.

previously sued Judge Urias. [Docs. 7-8] On October 16, 2023, this Court denied Plaintiff's request for an *ex parte* temporary restraining order regarding the original PHO's restrictions on the possession of firearms because they were no longer in effect and Plaintiff had not established facts showing that he had standing to challenge the restrictions on firearms in parks and playgrounds. [Doc. 9 at 1, 4] The Court further observed that Plaintiff had not demonstrated a likelihood of success on the merits as to the operative PHO because "he has not engaged with the historical tradition analysis under *Bruen* by showing that the regulation restricting firearms in playgrounds and certain public parks is inconsistent with the Nation's historical tradition of firearm regulation." [Doc. 9 at 5] Plaintiff subsequently filed a renewed motion seeking a preliminary injunction against the PHO's current restrictions on firearms in parks and playgrounds, with a de minimis analysis of historical tradition. [Doc. 10]

On December 5, 2023, the Court granted in part and denied in part Plaintiff's renewed motion for preliminary injunction. [Doc. 19] The Court denied Plaintiff's request to enjoin the PHO's restriction of firearms in playgrounds. *Id.* at 16. However, after concluding that Plaintiff had standing to challenge the PHO's restriction on firearms in parks, *id.* at 8, the Court held that Defendants "failed to carry their burden to show a historical tradition of banning firearms in public parks or their historical analogues." *Id.* at 9. Specifically, the Court found significant Defendants' failure to provide the Court with copies of the mid-to-late 19th- and early 20th-century laws prohibiting firearms in parks cited in their brief and other district court opinions. *Id.* at 11-12. But even if Defendants did provide copies of these laws, the Court concluded they were unpersuasive because Defendants could not point to any similar prohibitions from the 18th or early 19th century. *Id.* at 13. The Court found this significant because "Defendants have not established in the

evidentiary record that modern parks arose in the late 19th century" and did "not provide[] evidence that there were no historical analogues to modern parks in the 18th century and early 19th century." *Id.* Thus, according to the Court, Defendants "have not shown that the laws they did cite were consistent with earlier law." *Id.* at 15. Given this, the Court declined to consider the many mid-to-late 19th- and early 20th-century laws as sufficient to show a historical tradition of restricting firearms in public parks. *Id.*

## DISCUSSION

### I. Standard of Review

"Courts must consider four factors when deciding whether to stay an order pending appeal: (1) whether the stay applicant has made a strong showing that they are likely to succeed on appeal; (2) whether the stay applicant will be irreparably injured without a stay; (3) whether issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) whether public interest weighs in favor of granting or denying the stay." *Sec. USA Servs., LLC v. Invariant Corp.*, 2023 WL 5055060, at *1 (D.N.M. July 28, 2023) (Riggs, J.) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

### II. Defendants have a strong likelihood of succeeding on appeal

#### a. The Court erroneously found that Plaintiff has standing to seek injunctive relief

As explained in Defendants' Response to Plaintiff's Renewed Motion for Preliminary Injunction Under the Governor's Most Recent Orders, Plaintiff failed to allege or show that he intends to visit parks in Albuquerque or Bernalillo County *going forward*. [Doc. 15 at 7] This is a key requirement—and the Plaintiff's burden—for seeking prospective injunctive relief such as a preliminary injunction. *See Buscema v. Wal-Mart Stores E. LP*, 485 F. Supp. 3d 1319, 1329

5

(D.N.M. 2020) (stating that "a plaintiff cannot maintain an injunctive action 'unless he or she can demonstrate a good chance of being . . . injured in the future'" (quoting *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991))); *W. Watersheds Project v. Interior Bd. of Land Appeals*, 62 F.4th 1293, 1297 (10th Cir. 2023) ("Plaintiffs have the burden to demonstrate standing for each form of relief sought." (cleaned up)); *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) ("When a preliminary injunction is sought, a plaintiff's burden to demonstrate standing 'will normally be no less than that required on a motion for summary judgment.'" (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Although Plaintiff asserts he was previously affected by the PHO's restrictions on firearms in parks, there is no evidence in the record demonstrating that Plaintiff intends to engage in the proscribed conduct in the imminent future. [Doc. 19 at 6-7]. Plaintiff's declaration merely states that he was prohibited from carrying his firearm "for most of the months of September and October" at the parks that he attended for "non-scholastic youth sporting events" or to "enjoy the beautiful fall weather in Albuquerque during the balloon fiesta." [Doc. 10-2] He does not assert that these activities are ongoing or state any future desire to visit the relevant parks in the future. Other courts addressing sensitive place restrictions have concluded plaintiffs lacked standing based on a similar failure to allege a future desire to visit those locations. *See Antonyuk v. Hochul*, 639 F. Supp. 3d 232, 262 (N.D.N.Y. 2022) (finding plaintiff lacked standing where he previously visited locations in which firearms are prohibited, but did not allege that he intends to visit those locations with a firearm in the immediate future);[6] *Maryland Shall Issue, Inc. v. Montgomery Cnty.,*

---

[6] *See Antonyuk*, slip op. at 132 n.52 (noting that Plaintiffs did not contest this standing conclusion on appeal).

*Maryland*, 2023 WL 4373260, *5 (D. Md. July 6, 2023) (finding plaintiffs lacked standing where they did not allege they intended to visit the locations in question with a firearm). For these reasons, Defendants respectfully submit that the Court erred in finding Plaintiff had standing to seek a preliminary injunction under these circumstances. *See Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990) ("A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing.").

Likewise, Plaintiff failed to meet his burden of demonstrating redressability. In their response, Defendants pointed out that Plaintiff's purported injury was not redressable because the City of Albuquerque has issued administrative instructions interpreting New Mexico statutes that prohibit the carrying of firearms on school premises to apply to city neighborhood parks, city sports fields, Balloon Fiesta Park, and Civic Plaza. [Doc. 15 at 7-8 (citing *Valdez v. Lujan Grisham*, 2022 WL 2129071 (10th Cir. 2022))] While the Court recognized this, it found this to be "undeveloped in the briefing and insufficient to place the issue before the Court." [Doc. 19 at 7] However, it is *Plaintiff's* burden to demonstrate that his purported injury of not being able to carry a firearm in Albuquerque parks is redressable by enjoining the PHO.[7] *See Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005) ("As the party seeking to invoke federal jurisdiction,

---

[7] Defendants note that Plaintiff only asserted that he had previously desired to carry firearms in Albuquerque parks—not in Bernalillo County parks outside of Albuquerque. [*See generally* Doc. 1, 10-2] Accordingly, whether "the City's interpretation of state law applies elsewhere in Bernalillo County outside the City of Albuquerque" is of no moment. [Doc. 19 at 7]. Likewise, the fact that "an injunction would eliminate the threat of being prosecuted under the [PHO]" does not mean the injunction would redress Plaintiff's purported injury. *Cf. Valdez*, 2022 WL 2129071, at *2 ("If we were to grant a preliminary injunction against the PHO today, Ms. Blackford would still be required to be vaccinated to work at Presbyterian because of Presbyterian's own requirement and the IFC. Thus, the injury associated with Ms. Blackford's Contracts Clause claim is not redressable by enjoining the PHO.").

the plaintiff . . . has the burden of establishing each of these three elements of Article III standing."); *LA All. for Human Rights v. Cnty. of Los Angeles*, 14 F.4th 947, 956 (9th Cir. 2021) ("At the preliminary injunction stage, the plaintiffs must make a clear showing of each element of standing[.]" (cleaned up)). Once Defendants raised this issue, it was incumbent on Plaintiff to show otherwise. He did not. [*See generally* Doc. 16] Respectfully, the Court should not have excused Plaintiff's failure to do so. *See Whitmore*, 495 U.S. at 155-56.

### b. The Court erred in concluding Plaintiff demonstrated a *clear and unequivocal* right to a preliminary injunction

As the Court is aware, "[b]ecause a preliminary injunction is an extraordinary remedy, the movant's right to relief must be *clear and unequivocal*." *Dine Citizens*, 839 F.3d at 1281 (emphasis added) (cleaned up). Defendants respectfully submit that the Court erred in concluding that Plaintiff met this high burden when Defendants cited: (1) a large number of similar laws prohibiting firearms in parks and other gathering-places around the time of the Fourteenth Amendment's ratification, (2) caselaw and sources finding that modern-day parks did not exist in large numbers until the late 19th century, and (3) caselaw demonstrating that several courts, including one court in this district, that had addressed the constitutionality of similar prohibitions post-*Bruen* have refused to grant preliminary injunctions. [Doc. 15 at 12-16 (citing *We the Patriots, Inc. v. Lujan Grisham*, 2023 WL 6622042, at *9 (D.N.M. Oct. 11, 2023) ("[G]iven the different analysis of the historical evidence by three district courts which have considered the issue post-*Bruen*, it cannot be said that Plaintiffs' right to relief is 'clear and unequivocal.'" (quoting *Dine Citizens*, 839 F.3d at 1281)); *Md. Shall Issue*, 2023 WL 4373260, at *11-12 (concluding Second Amendment challenge to a prohibition on guns in parks was unlikely to succeed on the merits); *Kipke v. Moore*, 2023 WL 6381503, at *9-10 (D. Md. Sept. 29, 2023) (same))]. Together, these

8

historical laws are sufficient to demonstrate a historical tradition of regulating firearms in parks, and at the very least demonstrate that Plaintiff's right to relief was not "clear and unequivocal." *Dine Citizens*, 839 F.3d at 1281. With regard to the Court's concern that Defendants did not provide copies of the parks laws cited in their brief and caselaw, Defendants have attached to this Motion a compilation of over 100 prohibitions on firearms in parks. *See* Exhibit A.

Furthermore, with the Second Circuit concluding in today's decision in *Antonyuk* that prohibiting guns in urban parks is entirely constitutional, the landscape has now changed sharply in Defendants' favor. Several aspects of the decision bear emphasis. *First*, the court recognized that not only laws specific to parks, but also those regulating firearms in "public forums and quintessentially crowded places" constituted part of the regulatory tradition justifying such a prohibition. *See Antonyuk,* slip op. at 183-88 (surveying laws prohibiting guns in "the traditional, crowded public forum" from medieval times through colonial times and into Reconstruction). Defendants invoked this historical tradition by relying on Reconstruction-era prohibitions on guns in locations where people assemble. [Doc. 15 at 13.][8] As *Antonyuk* found, this historical tradition

---

[8] This Court [Doc. 19 at 15] dismissed these laws as "territorial laws[s] from western states," saying that *Bruen* "expressly rejected relying on territorial laws or decisions." Defendants' citations, however, included an 1871 law from Texas (admitted to the union in 1845) and an 1883 law from Missouri (admitted in 1821). And, in any event, "automatic rejection of any territorial laws … is not compelled by *Bruen*." *Antonyuk*, slip op. at 206 (accepting and giving effect to some of the same territorial laws Defendants present here). Specifically, *Bruen* rejected New York's reliance on a handful of territorial carry restrictions because they could not "overcome the overwhelming evidence" it had already found in favor of "an otherwise enduring American tradition permitting public carry." *Bruen*, 597 U.S. at 67. Here there is no evidence (let alone "overwhelming evidence") of an enduring American right to carry firearms in parks or in crowded public forums. Thus, as the Second Circuit observed, "there [i]s no reason … to discount territorial laws." *Antonyuk*, slip op. at 193.

also stretches back to the colonial era and earlier. *See* Exhibit B (compiling copies of additional crowded places/public forum laws).

*Second*, even though New York presented a far more limited record of prohibitions specific to parks than Defendants have here—just eight such prohibitions—*Antonyuk* held that the district court had been wrong to discount them, including because "they were apparently accepted without any constitutional objection by anyone." *See Antonyuk,* slip op. at 188-92. Defendants' much more extensive collection of laws provides an even stronger ground to uphold the PHO.

*Third*, *Antonyuk* found that public parks "r[o]se … as municipal institutions over the latter half of the 19th century," *see id.* at 189 & nn. 79-80 (citing scholarly articles); *see also id.* at 194-95 ("'The modern idea of the park emerged in the nineteenth century[.]'" (citation omitted)). Those findings undercut this Court's conclusion that Defendants had not established "that modern parks arose in the late 19th century" or that scholarly articles could not so establish. [Doc. 19 at 13].

*Fourth*, *Antonyuk* rejected the suggestion, which featured in this Court's decision [Doc. 19 at 13-14] that the absence of firearms prohibitions in Boston Common and early town greens "undermines a tradition of regulating firearms in urban public parks." *Id.* at 194-96. Early commons and greens are simply not akin to modern public parks. *See id.* (citing historical and scholarly materials highlighting the differences); *see also Wolford v. Lopez*, 2023 WL 5043805, at *21 (D. Haw. Aug. 8, 2023) ("[P]arks around 1791 were not comparable to modern parks[.]").[9] In any event, as *Antonyuk* observed, because "[l]egislatures past and present have not generally

---

[9] For further discussion on this point, Defendants attach a sworn declaration prepared by Dr. Terrence Young, a respected historian, submitted in a similar challenge in California and comprehensively explaining that "America's tradition of public parks was launched in the 1850s." Exhibit C at 3. *See generally Hernandez v. Lujan Grisham*, 494 F. Supp. 3d 1044, 1067 n.2 (D.N.M. 2020) (finding declarations filed in another court "persuasive").

legislated to their constitutional limits," absence of regulation does not indicate unconstitutionality. *See* slip op. at 48-49.

*Fifth*, this Court [Doc. 19 at 14-15] appeared to discount laws that were not from the founding era, contrary to the conclusion of another court in this district that "the period of the ratification of the Fourteenth Amendment in 1868 [is] more probative of the scope of the Second Amendment's right to bear arms than those from the Founding Era." *We the Patriots*, 2023 WL 6622042, at *8 (citing *National Rifle Association v. Bondi*, 61 F.4th 1317, 1322 (11th Cir. 2023), *vacated for reh'g en banc*, 72 F.4th 1346 (11th Cir. 2023); *see also Md. Shall Issue*, 2023 WL 4373260, at *8. *Antonyuk* recognized that "1868 and 1791 are both focal points of our analysis," and that, because "it is implausible that such public understanding would promptly dissipate," evidence from around those dates is also relevant. *See id.* at 55; *see also id.* at 176 (city park restrictions that state presented and court relied on were adopted between 1861 and 1897). Accordingly, this Court should have given significantly more weight to Defendant's 19th-century laws—and also, Defendants submit, to its early-20th-century laws, which form part of the same, unbroken tradition.

Together, these points clearly demonstrate that the PHO's restriction of firearms in parks "is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. And it bears repeating that judge who would have decided this case if Plaintiff had different counsel has recently reached a conclusion opposite to this Court's and refused to enjoin the PHO. *See We the Patriots*, 2023 WL 6622042. Furthermore, the only circuit court other than the Second Circuit that has addressed a preliminary injunction of restrictions on firearms in parks post-*Bruen* stayed that injunction pending appeal—indicating that it disagreed with the lower court's

conclusion. Specifically, in *Koons v. Att'y Gen. of N.J.*, No. 23-1900, Dkt. 29 (3d Cir. June 20, 2023), the Third Circuit granted a stay of the preliminary injunction against New Jersey's restriction on firearms in parks because it "conclude[d] the applicable factors warrant such a stay." *Id.* (citing *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015)). The first of those factors is "the stay applicant has made a strong showing that [it] is likely to succeed on the merits." *In re Revel AC, Inc.*, 802 F.3d at 568. The Second Circuit had similarly stayed the district court's injunction on New York's prohibition on firearms in parks, foreshadowing its decision to uphold the law. *See Antonyuk v. Hochul*, 2022 WL 18228317, at *1 (2d Cir. Dec. 7, 2022).

Here, it is equally likely that Defendants will succeed on merits of their appeal. At the very least, the strong weight of authority in Defendants' favor makes clear that the better course is to maintain the initial status quo while the appeal proceeds. *See, e.g.*, *Worth v. Jacobson*, 2023 WL 3052730, at *2 (D. Minn. Mar. 31, 2023) (staying own injunction of state's handgun age restriction pending appeal because, among other things, "*Bruen* left open a critical doctrinal question concerning the proper historical lens," and thus the dispute was "open to differing conclusions"); *Firearms Policy Coalition, Inc. v. McCraw*, 623 F. Supp. 3d 740, 757 (N.D. Tex. 2022) (staying own injunction of Texas's law prohibiting those under twenty-one from carrying a handgun pending appeal because "different interpretations on whether Reconstruction-Era history is applicable . . . could, for instance, alter the outcome of this case"); *Fraser v. ATF*, 2023 WL 5617894, at *3-4 (E.D. Va. Aug. 30, 2023) (staying own injunction pending appeal because there remain "unresolved questions about the exact application of the *Bruen* analytical mode" and "this area of law is in flux"); *Brown v. ATF*, No. 1:22-cv-00080, slip op. at 4, 7-8 (N.D.W. Va. Dec. 7,

2023) (staying own injunction in Second Amendment case pending appeal where "[c]ourts are split in their assessment of this question").

In light of the foregoing, Defendants respectfully suggest they have a strong likelihood of prevailing on appeal.

### III.   The non-merits factors favor a stay

As an initial matter, it cannot be disputed that New Mexico "suffers … irreparable injury" whenever it is barred "from effectuating statutes enacted by representatives of its people." *Maryland v. King*, 567 U.S. 1301, 1303 (2012); *Abbott v. Perez*, 138 S.Ct. 2305, 2324 n.17 (2018).[10] Indeed, the injunction undermines the judgment of New Mexico's democratic branches on how best to keep residents safe. That harm is especially profound here: the preliminary injunction threatens "an ongoing and concrete harm to" the State's "law enforcement and public safety interests," *King*, 567 U.S. at 1303, and produces confusion on the ground given the fact that another district court judge has refused to preliminarily enjoin the PHO. *See Winter v. NRDC*, 555 U.S. 7, 32-33 (2008) (equities independently sufficient for stay). But the government is not the only entity that may be irreparably harmed should the Court decline to stay the preliminary injunction. The public has the right to enjoy public spaces, such as parks, without the threat of being gunned down. Allowing individuals to carry firearms into public parks where large amounts

---

[10] True, the PHO is not a statute. However, it was issued pursuant to the statutory scheme the Legislature enacted to respond to public health emergencies such as the ongoing gun violence epidemic. *See* §§ 12-10A-1 to -19; *see generally* Kimberly Leonard, *American Medical Association Calls Gun Violence a Public Health Crisis*, U.S. News (June 14, 2016); *Firearm Violence Prevention*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/violenceprevention/firearms/index.html (last visited Dec. 6, 2023); Destinee Adams, *Is gun violence an epidemic in the U.S.? Experts and history say it is*, NPR News (June 29, 2023), https://www.npr.org/2023/06/29/1184731316/gun-violence-epidemic-suicide-mass-shooting-public-health-emergency-chicago.

of people and children gather significantly increases the likelihood of shootings in those locations.[11] Firearm injuries and deaths "c[an]not be undone, thus rendering the consequences irreparable." *Uniformed Fire Officers Ass'n v. De Blasio*, 973 F.3d 41, 48 (2d Cir. 2020); *see generally Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 806 (10th Cir. 2019) ("What makes an injury 'irreparable' is the inadequacy of, and the difficulty of calculating, a monetary remedy after full trial.").[12] And, unfortunately, the possibility of being shot in a park is not just theoretical, as there is a documented history of shootings in Albuquerque parks.[13]

In contrast, granting a stay will not substantially harm Plaintiff. As explained above, it is unclear, *at best*, if Plaintiff (a Torrance County resident) even intends to visit an Albuquerque area park in the near future. And even if he did, there is no evidence showing how often he would visit such parks or for how long he would remain there. Nor has Plaintiff shown that his ability to carry firearms in Albuquerque area parks would reduce the likelihood of him or his family being injured

---

[11] *See, e.g.*, Paul M. Reeping, et al., *The Effect of Gun-Free School Zones on Crimes Committed with a Firearm in Saint Louis, Missouri*, J. Urban Health (2023), https://bit.ly/3Rwvwqd (first-of-its-kind peer-reviewed, quantitative study finding "13.7% significantly fewer crimes committed with a firearm in gun-free school zones compared to gun-allowing zones").

[12] As one recent scientific survey shows, the presence of guns in parks also has intimidating and chilling effects and reduces the public's use and enjoyment of the parks. *See* Darrell A.H. Miller et al., *Technology, Tradition, and 'The Terror of the People*, Notre Dame L. Rev. (forthcoming 2023) (manuscript, at 20-22), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4521030.

[13] *See, e.g.*, *2 teens charged in shooting at busy Albuquerque park*, KOB4 News (Jul. 13, 2023), https://www.kob.com/new-mexico/2-teens-charged-in-shooting-at-busy-albuquerque-park/; Laila Freeman, *Man wanted for fatal Taylor Park shooting arrested*, KRQE News (Jun. 10, 2023), https://www.krqe.com/news/albuquerque-metro/man-wanted-for-fatal-taylor-park-shooting-arrested/; Audrey Davis, *West Mesa student shot at Cedar Ridge Park in northwest Albuquerque*, KRQE News (Mar. 6, 2023), https://www.krqe.com/news/albuquerque-metro/two-people-shot-at-cedar-ridge-pond-park-in-albuquerque/.

should a shooting occur.[14] Respectfully, to allow a resident from another county to singlehandedly strike down a public safety measure intended to protect Albuquerque and Bernalillo County residents based on this record would be an abuse of this Court's equitable powers. *See Dine Citizens*, 839 F.3d at 1281.[15] Accordingly, the equities and public interest strongly favor granting a stay.

## IV. The Court's preliminary injunction should only apply to Plaintiff

Should the Court decline to stay its injunction, Defendants respectfully request that it clarify that the injunction only apply to Plaintiff. As the Supreme Court has observed, "neither declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs, and the State is free to prosecute others who may violate the statute." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975); *see also United States v. National Treasury Employees Union*, 513 U.S. 454, 478 (1995) (narrowing injunction that banned the enforcement of the statute against all the employees in "the entire Executive Branch of the Government" to cover only the plaintiffs in the case and stating "although

---

[14] *See, e.g.*, Steven E. Barkan and Michael Rocque, *Crime Prevention: Programs, Policies, and Practices* at 65 (2021) (study finding "little evidence that self-defense gun use reduces the likelihood of victim injury during a crime").

[15] Indeed, other district courts have routinely stayed preliminary injunctions pending appeal in Second Amendment cases on the basis that the irreparable harm to the state and the public outweighed any harms to the plaintiff. *See, e.g.*, *Firearms Policy Coalition, Inc.*, 623 F. Supp. 3d at 757 (staying injunction pending appeal because a state "necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws," and the state's "interest and harm merges with that of the public"); *Worth*, 2023 WL 3052730, at *3-4 (same); *Fraser*, 2023 WL 5617894, at *4 (noting that although the plaintiffs "have a strong interest in exercising their constitutional rights and the stay will delay the date on which they may do so," a stay pending appeal would not cause them "substantial[] injur[y]).

the occasional case requires us to entertain a facial challenge in order to vindicate a party's right not to be bound by an unconstitutional statute, we neither want nor need to provide relief to nonparties when a narrower remedy will fully protect the litigants"); *Georgia v. President of the United States*, 46 F.4th 1283, 1303 (11th Cir. 2022) (explaining why injunctions should ordinarily be limited to apply only to the parties in an action). Therefore, the Court should, at a minimum, clarify that its injunction only applies to Plaintiff.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court stay[16] its preliminary injunction while Defendants pursue review in the Tenth Circuit, or alternatively, clarify that the injunction only applies to Plaintiff.

Respectfully submitted,

/s/ Holly Agajanian
**HOLLY AGAJANIAN**
*Chief General Counsel to Governor Michelle Lujan Grisham*
**KYLE P. DUFFY**
*Deputy General Counsel to Governor Michelle Lujan Grisham*
490 Old Santa Fe Trail, Suite 400
Santa Fe, New Mexico 87501
(505) 476-2200
Holly.Agajanian@exec.nm.gov
Kyle.duffy@exec.nm.gov

---

[16] Again, Defendants would prefer dissolution of the preliminary injunction if the Court is now satisfied they have met their burden under *Bruen*.

SERPE ANDREWS, PLLC

<u>/s/ Cody R. Rogers</u>
Cody R. Rogers
2540 El Paseo Road, Suite D
Las Cruces, NM 88001
(575) 288-1453
crogers@jarmielaw.com

*Counsel for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 8, 2023, I filed the foregoing via the CM/ECF filing system, which caused all counsel of record to be served by electronic means.

Respectfully submitted,

<u>/s/ Holly Agajanian</u>
Holly Agajanian