APPEAL,FILINGFEEDUE,JAS01,STAYED

# U.S. District Court
## United States District Court – District of New Mexico (Albuquerque)
## CIVIL DOCKET FOR CASE #: <u>1:23–cv–00781–KWR–LF</u>

| | |
|---|---|
| Springer v. Lujan Grisham et al | Date Filed: 09/12/2023 |
| Assigned to: District Judge Kea W. Riggs | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Laura Fashing | Nature of Suit: 440 Civil Rights: Other |
| Cause: 28:1331 Federal Question: Other Civil Rights | Jurisdiction: Federal Question |

**Plaintiff**

**James Springer**                                     represented by     **Jared Robert Vander Dussen**
Western Agriculture, Resource and
Business Advocates, LLP
New Mexico
400 Gold Ave SW
Ste 1000
Albuquerque, NM 87102
505–750–3060
Fax: 505–226–8500
Email: warba.llp.jared@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary J Cook**
1703 Sudderth # 425
Suite 5
Ruidoso, NM 88345
575–937–7644
Fax: 575–993–5362
Email: zach@zachcook.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**A. Blair Dunn**
Western Agriculture, Resource and
Business Advocates, LLP
400 Gold SW Ave
Suite 1000
Albuquerque, NM 87102
505–750–3060
Fax: 505–226–8500
Email: abdunn@ablairdunn–esq.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Michelle Lujan Grisham**                           represented by     **Holly Agajanian**

Office of the Governor
490 Old Santa Fe Trail
Ste. 400
Santa Fe, NM 87501
505−476−2210
Email: holly.agajanian@exec.nm.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cody R. Rogers**
Serpe Andrews, PLLC
2540 El Paseo Rd, Suite D
Las Cruces, NM 88001
575−288−1453
Email: crogers@serpeandrews.com
*ATTORNEY TO BE NOTICED*

**Kyle P Duffy**
Office of the Governor
490 Old Santa Fe
Ste. 400
Santa Fe, NM 87501
505−476−2210
Email: kyle.duffy@state.nm.us
*ATTORNEY TO BE NOTICED*

**Defendant**

**Office of the Governor**
*New Mexico*

**Defendant**

**Patrick Allen**                    represented by   **Holly Agajanian**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cody R. Rogers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kyle P Duffy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**New Mexico Department of Health**   represented by   **Holly Agajanian**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cody R. Rogers**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Kyle P Duffy**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/12/2023 | 1 | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF *FOR CIVIL RIGHTS VIOLATIONS* against All Defendants ( Filing Fee – Online Payment), filed by James Springer. (Attachments: # 1 Exhibit 1 – PHO, # 2 Exhibit 2 – Exec Order, # 3 Exhibit Declaration of James Springer, # 4 Civil Cover Sheet Civil Cover Sheet, # 5 Exhibit TRO Info Sheet)(Dunn, A.) Modified on 9/12/2023 (bc). (Entered: 09/12/2023) |
| 09/12/2023 | | Filing and Administrative Fees Received: $ 402 receipt number ANMDC–9001628 re 1 Complaint, filed by James Springer (Payment made via Pay.gov)(Dunn, A.) (Entered: 09/12/2023) |
| 09/12/2023 | | United States District Judge David H. Urias and United States Magistrate Judge Laura Fashing assigned. (bc) (Entered: 09/12/2023) |
| 09/12/2023 | 2 | NOTICE of Hearing on Emergency Request for Temporary Restraining Order Hearing set for 9/13/2023 at 01:00 PM in Albuquerque – 420 Mimbres Courtroom before District Judge David H. Urias. (jmg) [THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 09/12/2023) |
| 09/12/2023 | 3 | Emergency MOTION for Recusal by James Springer. (Attachments: # 1 Exhibit Declaration of A. Blair Dunn) (Dunn, A.) (Entered: 09/12/2023) |
| 09/13/2023 | 4 | MINUTE ORDER **VACATING** Emergency Request for Temporary Restraining Order set for 9/13/2023. THIS IS A TEXT ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED. (jmg) (Entered: 09/13/2023) |
| 09/14/2023 | | Summons Issued as to Patrick Allen, Michelle Lujan Grisham, New Mexico Department of Health, Office of the Governor. (bc) (Entered: 09/14/2023) |
| 09/25/2023 | 5 | CERTIFICATE OF SERVICE by James Springer *Of Complaint and Summons Upon Counsel for Defendants* (Dunn, A.) (Entered: 09/25/2023) |
| 09/28/2023 | 6 | AFFIDAVIT re 3 Emergency MOTION for Recusal *of Plaintiff James Springer* by James Springer (Dunn, A.) (Entered: 09/28/2023) |
| 10/02/2023 | 7 | ORDER by District Judge David H. Urias GRANTING 3 Motion for Recusal. (cmm) (Entered: 10/02/2023) |
| 10/02/2023 | 8 | PLEASE TAKE NOTICE that this case has been randomly reassigned to United States District Judge Kea W. Riggs as the trial judge. Under D.N.M.LR–Civ. 10.1, the first page of each document must have the case file number and initials of the assigned judges. |

| | | |
|---|---|---|
| | | ***Accordingly, further documents filed in this matter must bear the case number and the judges' initials shown in the case caption and the NEF for this document.*** Kindly reflect this change in your filings.<br><br>District Judge David H. Urias no longer assigned to this case.<br>[THIS IS A TEXT–ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (bc) (Entered: 10/02/2023) |
| 10/16/2023 | 9 | ORDER by District Judge Kea W. Riggs DENYING WITHOUT PREJUDICE AS MOOT Plaintiff's request for an ex parte temporary restraining order as to the Original Public Health Order issued September 8, 2023. (cmm) (Entered: 10/16/2023) |
| 10/26/2023 | 10 | Second MOTION for Preliminary Injunction by James Springer. (Attachments: # 1 Exhibit 1 – SAPHO, # 2 Exhibit 2 – Springer Declaration) (Dunn, A.) Modified on 10/27/2023 – untermed motion (cmm). (Entered: 10/26/2023) |
| 10/26/2023 | 11 | ORDER DIRECTING SERVICE AND SETTING BRIEFING SCHEDULE by District Judge Kea W. Riggs re 10 Motion for Preliminary Injunction. (cmm) Modified text on 10/27/2023 change ruling language (gr). (Entered: 10/26/2023) |
| 10/26/2023 | 12 | CERTIFICATE OF SERVICE by James Springer re 11 Order on Motion for Preliminary Injunction (Dunn, A.) (Entered: 10/26/2023) |
| 11/03/2023 | 13 | NOTICE by James Springer re 10 Second MOTION for Preliminary Injunction *of Supplemental Information* (Attachments: # 1 Exhibit 1 – Guv Press Release Extending PHA) (Dunn, A.) (Entered: 11/03/2023) |
| 11/09/2023 | 14 | NOTICE of Appearance by Cody R. Rogers on behalf of All Defendants (Rogers, Cody) (Entered: 11/09/2023) |
| 11/09/2023 | 15 | RESPONSE to Motion re 10 Second MOTION for Preliminary Injunction filed by Patrick Allen, Michelle Lujan Grisham, New Mexico Department of Health. (Rogers, Cody) (Entered: 11/09/2023) |
| 11/13/2023 | 16 | REPLY to Response to Motion re 10 Second MOTION for Preliminary Injunction filed by James Springer. (Attachments: # 1 Exhibit 1 – City Adminstrative Order, # 2 Exhibit 2 – Amended City Adminstrative Order) (Dunn, A.) (Entered: 11/13/2023) |
| 11/13/2023 | 17 | NOTICE of Briefing Complete by James Springer re 10 Second MOTION for Preliminary Injunction filed by James Springer (Dunn, A.) (Entered: 11/13/2023) |
| 12/04/2023 | 18 | NOTICE by James Springer re 10 Second MOTION for Preliminary Injunction *of Supplemental Information* (Attachments: # 1 Exhibit 1) (Dunn, A.) (Entered: 12/04/2023) |
| 12/05/2023 | 19 | MEMORANDUM OPINION AND ORDER by District Judge Kea W. Riggs GRANTING IN PART AND DENYING IN PART 10 Second MOTION for Preliminary Injunction . (cmm) (Entered: 12/05/2023) |
| 12/08/2023 | 20 | NOTICE OF APPEAL as to 19 Memorandum Opinion and Order by Patrick Allen, Michelle Lujan Grisham, New Mexico Department of Health, Office of the Governor. (Filing Fee – Deliver Payment) (Agajanian, Holly) (Entered: 12/08/2023) |
| 12/08/2023 | 21 | MOTION to Stay re 19 Memorandum Opinion and Order by Patrick Allen, Michelle Lujan Grisham, New Mexico Department of Health, Office of the Governor. (Attachments: # 1 Exhibit A, # 2 Exhibit A–1, # 3 Exhibit B, # 4 Exhibit C) |

| | | (Agajanian, Holly) (Entered: 12/08/2023) |
| --- | --- | --- |
| 12/11/2023 | 22 | ORDER TEMPORARILY STAYING PRELIMINARY INJUNCTION PENDING BRIEFING ON MOTION by District Judge Kea W. Riggs granting 21 Motion to Stay (cab) (Entered: 12/11/2023) |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JAMES SPRINGER,**

     **Plaintiff,**

**vs.**                           **No. 1:23-cv-00781-KWR-LF**

**MICHELLE LUJAN GRISHAM,**
**OFFICE OF THE GOVERNOR,**
**PATRICK ALLEN, and**
**NM DEPARTMENT OF HEALTH,**

     **Defendants.**

## <u>DEFENDANTS' NOTICE OF APPEAL</u>

Defendants Governor Michelle Lujan Grisham, Secretary Patrick M. Allen, and the New Mexico Department of Health (collectively, "Defendants"), by and through their counsel of record, hereby give notice of their appeal to the Tenth Circuit Court of Appeals of the Court's December 5, 2023, Memorandum Opinion and Order [Doc. 19] to the extent it enjoins enforcement of the public health order.

Respectfully submitted,

*/s/ Holly Agajanian*
**HOLLY AGAJANIAN**
*Chief General Counsel to Governor Michelle Lujan Grisham*
**KYLE P. DUFFY**
*Deputy General Counsel to Governor Michelle Lujan Grisham*
490 Old Santa Fe Trail, Suite 400
Santa Fe, New Mexico 87501
(505) 476-2200
Holly.Agajanian@exec.nm.gov
Kyle.duffy@exec.nm.gov

SERPE ANDREWS, PLLC

*/s/ Cody R. Rogers*
Cody R. Rogers
2540 El Paseo Road, Suite D
Las Cruces, NM 88001
(575) 288-1453
crogers@jarmielaw.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2023, I filed the foregoing via the CM/ECF filing system, which caused all counsel of record to be served by electronic means.

Respectfully submitted,

*/s/ Holly Agajanian*
Holly Agajanian

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

JAMES SPRINGER,

      Plaintiff,

v.                                          No. 1:23-cv-00781 KWR/LF

MICHELLE LUJAN GRISHAM,
OFFICE OF THE GOVERNOR,
PATRICK ALLEN, and
NEW MEXICO DEPARTMENT OF HEALTH,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Plaintiff's Renewed Motion for Preliminary Injunction under the Governor's Most Recent Orders **(Doc. 10)**. Plaintiff requests the Court partially preliminarily enjoin Defendants' Second Amended Public Health Order, to the extent it restricts his right to carry a firearm in public parks and playgrounds within Bernalillo County and Albuquerque, New Mexico. The issue must be resolved based on the new test set forth by the Supreme Court of the United States in _Bruen. See New York State Rifle & Pistol Ass'n, Inc. v. Bruen_, 597 U.S. 1, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022). Defendants have not satisfied the test set forth in _Bruen_ at this stage, as they have not demonstrated a historical tradition of prohibiting the carrying of firearms in public parks. The Court therefore enters a preliminary injunction enjoining the public health order to the extent it prohibits carrying firearms in public parks in Bernalillo County and Albuquerque, New Mexico.

However, the Court declines to enjoin the public health order to the extent it prohibits firearms in playgrounds. Plaintiff has not demonstrated standing to enjoin the firearm restrictions

in playgrounds.  Even if he had, the Government has demonstrated that playgrounds are analogous to "sensitive places" where there is a longstanding history of firearm regulation. For these reasons, and as set forth in more detail below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

The Governor issued an executive order declaring a state of public health emergency due to gun violence.  Doc. 1, Ex. 2, Governor's Executive Order 2023-130, Declaring State of Public Health Emergency Due to Gun Violence, September 7, 2023.  Subsequently, the Department of Health Secretary Patrick Allen issued a public health order imposing restrictions on the possession of firearms.  *See* Public Health Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures, Doc. 1, Ex. 1.  Those restrictions have been narrowed following rulings in related cases in this district.

Plaintiff challenges certain portions of the public health order currently in effect, the Second Amended Public Health Order, which in part temporarily restricts the right to carry firearms in certain public parks and playgrounds in Bernalillo County, New Mexico and Albuquerque, New Mexico.  *See* Doc. 10, Ex. 1, Second Amended Public Health Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures, November 8, 2023.  That public health order was issued by the Secretary of the New Mexico Department of Health, Defendant Patrick Allen. The Governor also issued renewed executive orders extending the public health emergency due to gun violence.

The Second Amended Public Health Order currently in effect is narrower than prior orders. In relevant part, the current order states that no individual, aside from law enforcement officers, licensed security officers, and certain others, may carry firearms in public parks or playgrounds.

2

*Id.* This temporary restriction does not apply to Albuquerque's Shooting Range Park, state parks, or areas owned by the New Mexico Energy, Minerals and Natural Resources Department, State Parks Division, or the State Land Office. *Id.* The Second Amended Public Health Order clarifies that the firearm restrictions apply to Bernalillo County and the City of Albuquerque. It also has several provisions unrelated to the right to bear firearms.

The relevant portion of the Second Amended Public Health Order the Plaintiff seeks to preliminarily enjoin is as follows:

> (1) No person, other than a law enforcement officer or licensed security officer, or active duty military personnel shall possess a firearm, as defined in NMSA 1978, Section 30-7- 4.1, either openly or concealed, in public parks or playgrounds within the City of Albuquerque or Bernalillo County, except in the City of Albuquerque's Shooting Range Park and areas designated as a state park within the state parks system and owned or managed by the New Mexico Energy, Minerals and Natural Resources Department State Parks Division, or the State Land Office

Doc. 10-1, Ex. 1, at 2. This temporary restriction is in effect through the duration of the public health emergency declared in the Governor's executive orders. Doc. 10-1, Ex. 1, at 3. On December 1, 2023, the Executive Order declaring a public health emergency was extended through December 29, 2023. *See* Doc. 18; Executive Order 2023-144 Renewing State of Public Health Emergency Due to Gun Violence, https://www.sos.nm.gov/legislation-and-lobbying/executive-orders (last accessed December 5, 2023).

## LEGAL STANDARD

The purpose of preliminary injunctive relief is to "preserve the relative positions of the parties" until a hearing or trial on the merits can be held. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). "In issuing a preliminary injunction, a court is primarily attempting to preserve the power to render a meaningful decision on the merits." *Keirnan v. Utah Transit Auth.*, 339 F.3d 1217, 1220 (10th Cir. 2003) (quotation marks and citation omitted). "A preliminary injunction is

3

an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019) (quoting *Free the Nipple–Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019)). "[B]ecause a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Fundamentalist Church of Jesus Christ of Latter–Day Saints v. Horne,* 698 F.3d 1295, 1301 (10th Cir. 2012) (citations omitted).

To obtain a preliminary injunction or temporary restraining order, Plaintiff must show: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; *and* (4) that the injunction, if issued, will not adversely affect the public interest." *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)).

## DISCUSSION

I.    **A heightened preliminary injunction standard does not apply here**.

Defendants suggest that Plaintiff must satisfy a heightened standard to obtain a preliminary injunction in this case, because an injunction would alter the status quo. The Court disagrees. The Tenth Circuit has described the heightened standard as follows:

> [C]ourts "disfavor" some preliminary injunctions and so require more of the parties who request them. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258–59 (10th Cir. 2005). Disfavored preliminary injunctions don't merely preserve the parties' relative positions pending trial. *Id.* Instead, a disfavored injunction may exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win. *Awad*, 670 F.3d at 1125 (citing *Summum v. Pleasant Grove City*, 483 F.3d 1044, 1048–49 (10th Cir. 2007)); *see also Phillip v. Fairfield Univ.*, 118 F.3d 131, 133 (2d Cir. 1997) (explaining that an injunction is "mandatory" if "its terms would alter, rather than preserve, the status quo by commanding some positive act"). To get a disfavored injunction, the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms

4

factors: She must make a "strong showing" that these tilt in her favor. *Fish*, 840 F.3d at 724 (quoting *Beltronics*, 562 F.3d at 1071).

*Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 797 (10th Cir. 2019).

The Court is not convinced that any of the above circumstances apply here to warrant a heightened standard. The Tenth Circuit reasoned that preliminarily enjoining an unconstitutional law would not alter the status quo, as the last peaceable uncontested status was *before* the alleged unconstitutional law was enacted. *See Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 798 n.3 (10th Cir. 2019) (reasoning that the "status quo," the "last peaceable uncontested status existing between the parties before the dispute developed" was *before* the unconstitutional law was enacted). Similarly here, Plaintiff seeks to enjoin an allegedly unconstitutional restriction on his Second Amendment right to bear arms. Plaintiff does not request all relief be granted; moreover the preliminary injunction can be undone if Defendants prevail at trial. *Id.* at 798 n.3.

Therefore, a heightened standard does not apply here. Nevertheless, the Court finds that Plaintiff satisfies even the heightened standard as to his request to enjoin the restriction on carrying firearms in public parks, as explained below.

## II.     <u>Standing for preliminary injunctive relief</u>.

Defendants assert that Plaintiff has not established standing for preliminary injunctive relief. The Court agrees in part and concludes that Plaintiff (1) has established standing to challenge the public health order's restriction on carrying firearms in public parks, (2) but lacks standing to challenge the restriction on carrying firearms in playgrounds.

To demonstrate standing, Plaintiff must show he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 194 L.

DNM 12

Ed. 2d 635 (2016), as revised (May 24, 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-1, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). Here, this means that Plaintiff must demonstrate standing to challenge the restrictions on carrying firearms in both public parks and playgrounds. *See Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought").

At issue here is whether Plaintiff has demonstrated an injury-in-fact. "[A] plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59, 134 S. Ct. 2334, 2341, 189 L. Ed. 2d 246 (2014) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)). Defendants assert that Plaintiff has failed to assert an injury-in-fact, as he does not state he desires to carry firearms in parks and playgrounds in the future.

Plaintiff filed a declaration in support of standing. He asserts that:

3.      I have been prohibited by the Second Amended Public Health order from lawfully carrying my firearm for my and my family's protection for most of the months of September and October at the parks that I attend for non-scholastic youth sporting events or just to enjoy the beautiful fall weather in Albuquerque during the balloon fiesta.

4.      I also planned to organize and attend a rally in support of the Second Amendment to exercise my First Amendment rights by engaging in the expressive conduct of openly carrying a firearm in Civic Plaza but also have been prohibited from doing so by the SAPHO.

**Doc. 10-2, Exhibit 2, at 1.** Moreover, in his verified Motion, he asserts that he "has children that participate in youth sports at the parks at issue in the SAPHO. Under the SAPHO, he is now been forced [sic] to attend several of those parks without the benefit of firearms for his own personal

6

defense, or for the defense of his family in the drug and violence riddled city of Albuquerque." **Doc. 10 at 2.**

Here, Plaintiff clearly asserts that the public health order prevents him from carrying firearms in public parks, and that he intends to carry firearms in public parks in Albuquerque or Bernalillo County.

However, Plaintiff does not assert that he has ever, or intends to, carry firearms in playgrounds. Each youth activity identified by Plaintiff takes place in a park. Therefore, Plaintiff has not demonstrated an injury stemming from the public health order's restriction on carrying firearms in playgrounds.

Defendants summarily assert that Plaintiff's asserted injury is not redressable as there is a separate restriction on carrying firearms in parks in Albuquerque. According to Defendants, the City of Albuquerque has administratively interpreted state law prohibiting the carrying of firearms on school property to include a wide range of city property, including parks. **Doc. 15 at 7**. That restriction is subject to a separate lawsuit in state court. The Court finds this point to be undeveloped in the briefing and insufficient to place the issue before the Court. *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000) ("The district court was not obligated to comb the record in order to make [the plaintiff's] arguments for him."). For example, it is unclear whether the threat of prosecution in the other case is credible. Even assuming Defendants' redressability argument were properly developed, Defendants do not allege that the City's interpretation of state law applies elsewhere in Bernalillo County outside the City of Albuquerque. Moreover, an injunction would eliminate the threat of being prosecuted under the public health order, which would redress Plaintiff's injury. Finally, Defendants' argument in their response that a separate firearm ban was already in place appears to contradict the Public Health Order and Executive

7

Order, which stated that a restriction on the carrying of firearms was necessary to curb rising gun violence. In other words, Defendants clearly intended for the public health order to affect the right to carry firearms in public parks. Therefore, it appears an injunction would still redress Plaintiff's injury, with respect to the firearm ban in public parks.

Finally, Plaintiff has not established standing with respect to his First Amendment claim. In its prior order denying Plaintiff's first motion, the Court directed Plaintiff to establish standing. *See* Doc. 9. In his motion and reply, Plaintiff does not establish standing for his First Amendment claim, or state which standing test applies to his First Amendment claim. *See, e.g., Aptive Env't, LLC v. Town of Castle Rock, Colorado*, 959 F.3d 961, 974–75 (10th Cir. 2020) (setting forth a test for standing for First Amendment claim). Moreover, Defendants assert that the public health order currently in effect does not restrict carrying firearms in Civic Plaza, where Plaintiff seeks to hold his rally. **Doc. 15 at 17**.

In sum, Plaintiff has established standing to challenge the restriction on carrying firearms in public parks, as he has demonstrated that he intends to engage in a course of action where there exists a credible threat of prosecution. However, Plaintiff has not established standing as to his First Amendment claim or to enjoin the restriction on carrying firearms in playgrounds.

III. **Plaintiff has demonstrated a likelihood of success on the merits of his Second Amendment claim challenging the restriction on carrying firearms in public parks, but not as to carrying firearms in playgrounds.**

A. **Defendants have not carried their burden of showing a historical tradition of banning firearms in public parks or their historical analogues.**

As explained below, Plaintiff has shown a likelihood of success on the merits as to his Second Amendment claim challenging firearm restrictions in public parks, as Defendants have

8

failed to carry their burden to show a historical tradition of banning firearms in public parks or their historical analogues.

The Second Amendment protects "an individual's right to carry a handgun for self-defense outside the home." *New York State Rifle & Pistol Association, Inc. v. Bruen*, __U.S. __, 142 S.Ct. 2111, 2122, 213 L.Ed.2d 387 (2022). In *Bruen,* the United States Supreme Court adopted a new two-step test to determine whether a restriction violates the Second Amendment. *Id.* at 2129-30. In the first step, the court must determine "whether the Second Amendment's plain text covers an individuals' conduct" – if it does, "the Constitution presumptively protects that conduct." *Id.* at 2130. In the second step, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* Only if the government makes such as showing "may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.*

As to the first step, Defendants do not appear to dispute that the Second Amendment's plain text covers an ordinary, law-abiding citizen's right to carry firearms outside the home for his or her own defense. *Bruen*, 142 S. Ct at 2133-35. Rather, they appear to focus on the second step. The Court will do the same.

As to the second step, Defendants have failed to carry their burden of demonstrating a historical tradition of firearm regulation in public parks. The burden on the merits in a preliminary injunction proceeding tracks the burden at trial. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006) (holding that the "burdens at the preliminary injunction stage track the burdens at trial," therefore government had burden even at preliminary injunction stage); *see also Baird v. Bonta*, 81 F.4th 1036, 1044 (9th Cir. 2023).

Here, the *Bruen* decision placed the burden of showing a historical tradition of firearm regulation on the government. *Bruen*, 142 S.Ct. at 2135 ("the burden falls on respondents to show that New York's proper-cause requirement is consistent with this Nation's historical tradition of firearm regulation. Only if respondents carry that burden can they show that the pre-existing right codified in the Second Amendment, and made applicable to the States through the Fourteenth, does not protect petitioners' proposed course of conduct."). Therefore, Defendants bear the burden to identify a "well-established and representative historical analogue" to ban carrying firearms in public parks. *Bruen*, 142 S. Ct. at 2133, 2135; *see also Rocky Mountain Gun Owners v. Polis*, No. 23-CV-01077-PAB, 2023 WL 5017253, at *13 (D. Colo. Aug. 7, 2023) (government had burden of showing regulation was constituent with historical tradition); *Wolford v. Lopez*, No. CV 23-00265 LEK-WRP, 2023 WL 5043805, at *20–21 (D. Haw. Aug. 8, 2023) (same).

Moreover, "[i]n our adversarial system of adjudication, we follow the principle of party presentation." *United States* v. *Sineneng-Smith*, 590 U.S. ——, ——, 140 S.Ct. 1575, 1579, 206 L.Ed.2d 866 (2020). District courts "are thus entitled to decide a case based on the historical record compiled by the parties." *Bruen*, 142 S. Ct. at 2130 n.6. A district court need not try to help the government carry its burden by "sift[ing] ... historical materials" to find an analogue. *Id.* at 2150 ("Of course, we are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden.").

In analyzing the government's proffered historical evidence, the Court must keep in mind that "constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Heller*, 554 U.S. at 634–635, 128 S.Ct. 2783, *quoted in New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2136, 213 L. Ed. 2d 387 (2022). But "the Second Amendment's historically fixed meaning applies to new circumstances ...." *Bruen*, 142

10

S.Ct. at 2132. This task "will often involve reasoning by analogy" and "[l]ike all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are relevantly similar." *Id*. (citation and internal quotation marks omitted). In assessing whether regulations are "relevantly similar under the Second Amendment," courts should look "toward at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." Id. at 2132–33. But, "analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check." *Id*. at 2133. "[A]nalogical reasoning requires only that the government identify a well-established and representative **analogue**, not a historical **twin**. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id*. (emphases in *Bruen*).

Here, Defendants provide the Court with no evidence attached to its response, in declaration or any other evidentiary form. Rather, Defendants point to two separate categories of citations: (1) citations to regulations identified in a district court case, *Maryland Shall Issue* and (2) western territorial laws. *See* **Doc. 15 at 12**, *citing Maryland Shall Issue, Inc. v. Montgomery Cnty., Maryland*, No. CV TDC-21-1736, 2023 WL 4373260, at *11-12 (D. Md. July 6, 2023); **Doc. 15 at 13** (citing western territorial laws). As explained below, these citations do not satisfy Defendants' burden of pointing to a historical tradition of firearm regulation in public parks or their historical analogues.

The *Maryland Shall Issue* decision cited to the following laws or regulations restricting firearms in public parks:

> *see* First Annual Report on the Improvement of the Central Park, New York at 106 (**1857**), Opp'n Ex. 13, ECF No. 59-17; an 1870 law enacted by the Commonwealth of Pennsylvania stating that "[n]o persons shall carry fire-arms" in Fairmount Park in Philadelphia, Pennsylvania, *see* Acts of Assembly Relating to Fairmount Park at

11

18, § 21.II (**1870**), Opp'n Ex. 20, ECF No. 59-24; an 1895 Michigan state law providing that "No person shall fire or discharge any gun or pistol or carry firearms, or throw stones or other missiles" within a park in the City of Detroit, *see* **1895** Mich. Local Acts at 596, § 44, Opp'n Ex. 43, ECF No. 59-47; and a **1905** ordinance in Chicago, Illinois stating that "all persons are forbidden to carry firearms or to throw stones or other missiles within any of the Parks ... of the City," **1905** Chi. Revised Mun. Code, ch. XLV, art. I, § 1562, Opp'n Ex. 49, ECF No. 59-53. Similar restrictions were enacted to bar the carrying of firearms in (I) Saint Paul, Minnesota, *see* Annual Reports of the City Officers and City Boards of the City of Saint Paul at 689 (**1888**), Opp'n Ex. 32, ECF No. 59-36; (2) Williamsport, Pennsylvania, *see* **1891** Williamsport, Pa. Laws and Ordinances at 141, § 1, Opp'n Ex. 37, ECF No. 59-41; (3) Wilmington, Delaware, *see* **1893** Wilmington, Del. Charter, Part VII, § 7, Opp'n Ex. 39, ECF No. 59-43; (4) Reading, Pennsylvania, *see* A Digest of the Laws and Ordinances for the Government of the Municipal Corporation of the City of Reading, Pennsylvania at 240, § 20(8) (**1897**), Opp'n Ex. 44, ECF No. 59-48; (5) Boulder, Colorado, *see* **1899** Boulder, Colo. Revised Ordinances at 157, § 511, Opp'n Ex. 45, ECF No. 59-49; (6) Trenton, New Jersey, *see* **1903** Trenton, N.J. Charter and Ordinances at 390, Opp'n Ex. 48, ECF No. 59-52; (7) Phoenixville, Pennsylvania, *see* A Digest of the Ordinances of Town Council of the Borough of Phoenixville at 135, § 1 (**1906**), Opp'n Ex. 52, ECF No. 59-56; (8) Oakland, California, *see* **1909** Oakland, Cal. Gen. Mun. Ordinances at 15, § 9, Opp'n Ex. 53, ECF No. 59-57; (9) Staunton, Virginia, *see* **1910** Staunton, Va. Code, ch. II, § 135, Opp'n Ex. 54, ECF No. 59-58; and (10) Birmingham, Alabama, *see* **1917** Birmingham, Ala. Code, ch. XLIV, § 1544, Opp'n Ex. 55, ECF No. 59-59.

On a state level, in **1905**, Minnesota prohibited the possession of firearms within state parks unless they were unloaded and sealed by a park commissioner. 1905 Minn. Laws, ch. 344, § 53, Opp'n Ex. 50, ECF No. 59-54. In 1917, Wisconsin prohibited bringing a "gun or rifle" into any "wild life refuge, state park, or state fish hatchery lands" unless it was unloaded and in a carrying case. **1917** Wis. Sess. Laws, ch. 668, § 29.57(4), Opp'n Ex. 56, ECF No. 59-60. In **1921**, North Carolina enacted a law prohibiting the carrying of firearms in both private and public parks without the permission of the owner or manager of that park. *See* 1921 N.C. Sess. Laws 53–54, Pub. Laws Extra Sess., ch. 6, §§ 1, 3, Opp'n Ex. 57, ECF No. 59-61.

*Maryland Shall Issue, Inc. v. Montgomery Cnty., Maryland*, No. CV TDC-21-1736, 2023 WL 4373260, at *11 (D. Md. July 6, 2023) (emphases added).  The Court notes that these laws were provided to the *Marlyand Shall Issue* court as exhibits but were not provided to the undersigned.

Nevertheless, in reviewing these historical citations, there are several issues that render them irrelevant or unpersuasive in light of *Bruen*.  There was *no* citation to any relevant laws around the time of the enactment of the Second Amendment, and only two citations to laws before

12

or around the enactment of the Fourteenth Amendment. *Maryland Shall Issue* cited to six ordinances or laws from the late 1880 or 1890s, more than two decades after the enactment of the Fourteenth Amendment, which have little bearing on the understanding of the right to bear arms during the enactment of the Second Amendment or Fourteenth Amendment. *Bruen*, 142 S.Ct at 2133. Finally, *Maryland Shall Issue* cited to several early 20th century laws, a time period which the *Bruen* decision expressly chose not to consider, as they were not consistent with earlier law.

Defendants appear to take the position that they need not cite to any laws from the 18th century or early to mid-19th century because modern public parks existed beginning in the late 19th century.

Defendants have not established in the evidentiary record that modern parks arose in the late 19th century. In a footnote, Defendants reference several articles, but do not provide the full citation for them or provide them to the court. The Court is not convinced such articles provide sufficient evidence. Even assuming those articles provided evidence for the Court to consider, it is not at all clear that there was no historical *analogue* to parks. *See* Anne Beamish, *Before Parks: Public Landscapes in Seventeenth- and Eighteenth-Century Boston, New York, and Philadelphia*, 40 Landscape J. 1, 14 (2021) ("Today's American public park is deeply rooted in the seventeenth- and eighteenth-century utilitarian village green, common, square, and parade ground"); *Koons v. Platkin*, 2023 WL 3478604, at *83 (D. NJ 2023) (listing examples and noting no evidence that historical analogues prohibited the carrying of firearms).

*Bruen* did not state that the government need only look for historical *twins*. *Bruen*, 142 S.Ct. at 2133. Rather, Defendants have the burden to cite to historical *analogues*, and Defendants have not provided evidence that there were no historical analogues to modern parks in the 18th century and early 19th century. *Id.* Even if parks (as defined today) did not exist in the 18th century

13

or early 19th century, Defendants still had the burden of providing evidence of firearm regulations in public spaces that were relevantly similar to parks. *Bruen*, 142 S.Ct. at 2132-33. Here, Defendants did not present any such evidence. *See, e.g., Koons*, — F.Supp.3d at ——, 2023 WL 3478604, at *83 ("Despite the existence of such common lands since the colonial period, the State has failed to come forward with any laws from the 18th century that prohibited firearms in areas that today would be considered parks."), *cited in Wolford v. Lopez*, No. CV 23-00265 LEK-WRP, 2023 WL 5043805, at *21 (D. Haw. Aug. 8, 2023) (same).

Moreover, the vast majority of the citations in *Marlyand Shall* Issue are to laws or ordinances arising in the late 19th century and early 20th century. "This Court gives less weight to laws enacted within a few years of the 20th century because they provide little insight into the public's understanding of the Second Amendment either in 1791 or 1868." *Bruen*, 142 S. Ct. at 2154 (explaining that "late-19th-century evidence cannot provide much insight into the meaning of the Second Amendment when it contradicts earlier evidence"); *see also Id.* at 2154 n.28 ("We will not address any of the 20th-century historical evidence brought to bear by respondents or their *amici*. As with their late-19th-century evidence, the 20th-century evidence presented by respondents and their *amici* does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence."). The *Bruen* decision considered late 19th century laws only to the extent they were consistent with earlier laws. *Id.* at 2137, 2154. And it did not consider 20th century law at all. *Id.* at 2154 n.28; *see also Heller*, 554 U.S. at 605, 128 S.Ct. 2783 (evidence of "how the Second Amendment was interpreted from immediately after its ratification through the end of the 19th century" represented a "critical tool of constitutional interpretation."), quoted in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2136, 213 L. Ed. 2d 387 (2022). Because Defendants did not create a record, in accordance with these authorities, of earlier laws

14

restricting the carrying of firearms in historical analogues, they have not shown that the laws they did cite were consistent with earlier law.

Defendants also cites to territorial law from western states such as New Mexico, Arizona, Oklahoma, and Texas. But the *Bruen* court expressly rejected relying on territorial laws or decisions. *Bruen*, 142 S.Ct.. at 2154-55. The *Bruen* decision reasoned that the territories governed less than 1% of the American population, the territorial laws were enacted a century after the Second Amendment was adopted, the territorial laws were transitory, and they were rarely subject to judicial scrutiny. *Id.* at 2155. Therefore, western territorial laws shed little light on the understanding of the Second Amendment when it was adopted. Defendants suggest the Court should reject the *Bruen* decision's analysis of western territorial law. District courts lack authority to reject the analysis set forth by the United States Supreme Court, and in any event, *Bruen's* analysis is persuasive.

In sum, Defendants provide *no* evidence illuminating the scope of the Second Amendment right at or around the time it was adopted. *Bruen*, 142 S.Ct. at 2136 (constitutional rights "are enshrined within the scope they were understood to have when the people adopted them"). As to the Fourteenth Amendment, Defendants presented insufficient evidence illuminating such understanding. The vast majority of Defendants' citations come at least 20 years after the enactment of the Fourteenth Amendment, which the *Bruen* decision only considered to the extent it was consistent with earlier law.

Because Defendants failed to carry their burden to establish a historical tradition of firearm regulations in public parks, the Court concludes that Plaintiff is likely to succeed on the merits.

**B.      Defendants have demonstrated a historical tradition of restricting firearms in sensitive places analogous to playgrounds.**

Even assuming Plaintiff has standing to challenge the restriction on firearms in playgrounds, the Court would not enter an injunction in his favor, as Defendants have demonstrated that playgrounds are "sensitive places" where there is a longstanding historical tradition of firearm regulation.

*Bruen* and *Heller* acknowledged "longstanding" "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." *Heller*, 554 U.S. at 626, *quoted in Bruen*, 142 S.Ct. at 2133. Moreover, "courts can use analogies to those historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in *new* and analogous sensitive places are constitutionally permissible." *Bruen*, 142 S.Ct. at 2133.

This court finds, like the majority of district courts to consider this issue so far, that playgrounds are analogous to schools. Therefore, playgrounds are "sensitive places" where firearms may be restricted. *We the Patriots USA, Inc. v. Grisham*, No. 1:23-CV-00773-DHU-LF, 2023 WL 6377288, at *3 (D.N.M. Sept. 29, 2023); *Antonyuk v. Hochul*, 639 F.Supp.3d 232, 324 (N.D.N.Y. 2022), reconsideration denied sub nom, *Antonyuk v. Negrelli*, No. 122CV0986GTSCFH, 2022 WL 19001454 (N.D.N.Y. Dec. 13, 2022) (declining to preliminarily enjoin New York's gun law ban on carrying firearms at public playgrounds); *Koons v. Platkin*, No. CV 22-7463 (RMB/AMD), 2023 WL 3478604, at *82 (D.N.J. May 16, 2023). The Court declines to preliminarily enjoin the public health order as to its restrictions on firearms in playgrounds.

## III. Plaintiff has not demonstrated a likelihood of success on his First Amendment claim and Due Process claim.

In two paragraphs of argument, Plaintiff suggests that Defendants have violated his substantive due process rights and First Amendment rights. Even assuming Plaintiff had established standing on this issue, the Court would not grant him injunctive relief. Plaintiff appears to assert that Defendants are excluding him from traditional public forums on the basis of the

content of his speech.  *See* Motion, Doc. 10 at 6-7.  However, his argument lacks sufficient citation to case law or analysis of the legal issues.  This effort is not sufficient to place these complex constitutional issues before the Court.  Therefore, the Court concludes that Plaintiff has not shown a likelihood of success on his First Amendment and Due Process claims.

## IV.    <u>Remaining factors favor issuance of preliminary injunction.</u>

To obtain a preliminary injunction, Plaintiff must show that he "will suffer irreparable injury unless the injunction issues." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) (quoting *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992)). The Tenth Circuit has observed that "[m]ost courts consider the infringement of a constitutional right enough and require no further showing of irreparable injury." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 805 (10th Cir. 2019). The Tenth Circuit has ruled that violations of individual rights guaranteed under the Constitution constitute irreparable harm. *Aposhian v. Barr*, 958 F.3d 969, 990 (10th Cir. 2020) (collecting cases).  Here, Plaintiff has demonstrated a likely violation of his Second Amendment right to carry firearms in public parks in Bernalillo County, New Mexico and Albuquerque, New Mexico.  The violation of a constitutional right constitutes irreparable harm which cannot necessarily be adequately remedied by money damages. *Free the Nipple-Fort Collins*, 916 F.3d at 806-07 ("When a constitutional right hangs in the balance, though, even a temporary loss usually trumps any harm to the defendant.... (internal quotations and citations omitted)). Therefore, Plaintiff has demonstrated irreparable harm.

Defendants summarily suggest that Plaintiff cannot demonstrate irreparable harm because he is already prohibited from carrying firearms in parks, as the City of Albuquerque has administratively interpreted state law banning firearms in schools to apply to a wide range of city property, including parks. This restriction is challenged in a separate lawsuit in state court.  The

Court addressed a similar argument above regarding standing.  As explained above, Defendants have not adequately briefed this separate case to place this issue before the Court.  For example, it is not in the record whether that separate restriction is enforced in city parks, whether there is a reasonable threat of prosecution under the city's administrative interpretation of state law, or why Defendants felt a separate firearm ban was necessary in light of this alleged existing restriction. Even assuming the issue were adequately briefed, enjoining the public health order would remove the threat of prosecution under the public health order.  Moreover, Defendants have not stated that the City of Albuquerque's separate restriction on firearms in parks is in effect elsewhere in Bernalillo County. Finally, Defendants' argument in their response that a firearm ban was already in place appears to contradict the Public Health Order and Executive Order, which stated that a restriction on the carrying of firearms was necessary to curb rising gun violence.  In other words, Defendants clearly intended for the public health order to affect the right to carry firearms in public parks.

Plaintiff must also demonstrate "that the balance of equities tips" in his favor and "that the injunction is in the public interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). "The third preliminary-injunction factor involves balancing the irreparable harms identified above against the harm that the preliminary injunction causes" the Defendants. *Free the Nipple-Fort Collins,* 916 F.3d at 806. A loss of a constitutional right usually trumps any harm to the defendant, even under a heightened standard. *Id*. Here, the Court finds that the irreparable harm suffered by Plaintiff outweighs the harm to Defendants' interests. *Id.* at 806-07.

As to the fourth and final factor, "it's always in the public interest to prevent the violation of a party's constitutional rights." *Id.* at 806-07.

18

Therefore, the remaining factors all weigh in favor of a preliminary injunction as to the restriction on carrying firearms in public parks.

**CONCLUSION**

District courts must follow the binding precedent of the Supreme Court of the United States, as relevant here, the *Bruen* decision. *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022). Pursuant to that decision, the Court preliminarily enjoins the portion of the Second Amended Public Health Order restricting the carrying of firearms in public parks in Albuquerque and Bernalillo County, New Mexico. Because Defendants have not carried their burden of establishing a historical tradition of banning firearms in public parks (or their historical analogues) as required under *Bruen*, the Court concludes that Plaintiff has shown a likelihood of success on the merits of his Second Amendment claim. Moreover, the remaining preliminary injunction factors weigh in favor of entering a preliminary injunction as to the restriction on carrying firearms in public parks.

However, Plaintiff has not established standing to challenge the firearm restriction in playgrounds. Even if he had, the Court would not enjoin the firearm restriction in playgrounds, as playgrounds appear to be "sensitive places" under *Bruen* permitting such restrictions.

**IT IS THEREFORE ORDERED** that Plaintiff's Renewed Motion for Preliminary Injunction under the Governor's Most Recent Orders **(Doc. 10)** is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that the Court preliminarily enjoins *only* the limited portion of the Second Amended Public Health Order (Doc. 10, Ex. 1, at 2), issued by the New Mexico Department of Health Secretary Patrick Allen, which restricts the carrying of firearms in public

19

parks in Albuquerque and Bernalillo County, New Mexico.  No other portion of the public health order is enjoined.

_____

UNITED STATES DISTRICT JUDGE

20

DNM 27