**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**JAMES SPRINGER,**

       **Plaintiff,**

**v.**

       **Civil Action No. 1:23-cv-00781-KWR-LF**

**MICHELLE LUJAN GRISHAM,**
**OFFICE OF THE GOVERNOR,**
**PATRICK ALLEN, and**
**NM DEPARTMENT OF HEALTH,**

       **Defendants.**

**RESPONSE IN OPPOSITION TO EMERGENCY MOTION FOR STAY PENDING APPEAL AND CLARIFICATION**

COMES NOW Plaintiff by and through his undersigned counsel of record, and respectfully offers his Response in Opposition to the Emergency Motion for Stay Pending Appeal and Clarification, ECF Doc. No. 21, and for his reasons states:

**INTRODUCTION**

Ultimately, this Court has cut to the quick of the instant motion, by requesting in its Order, ECF Doc. No. 22, that the parties brief the extent to which this Court may reconsider its grant of the preliminary injunction while the interlocutory appeal is pending before the Tenth Circuit. This is especially important, given that it appears that Defendants are attempting to bootstrap almost 1000 pages of exhibits of additional evidence that they could have supplied but elected not to when they filed their Response. Putting aside the untimeliness of the new allegations of material evidence the Defendants seek to have this Court review for reconsideration, the information is unpersuasive because of the laws they cite in the time before (1851-1866, *see* ECF. Doc. No. 21-1 pg 1) the ratification of the Fourteenth Amendment only one state (NY) was regulating firearms in "modern" parks and the recent

1

time after ratification (1868 – 1878, *see* ECF. Doc. No. 21-1 pgs 1-2) only three additional states, for a total of 4 out of 45 were regulating firearms in parks. Thus, not only is this untimely information, it doesn't change the analysis with regard to parks that this Court has already performed and is merely rearguing that the Court was wrong in holding:

> Nevertheless, in reviewing these historical citations, there are several issues that render them irrelevant or unpersuasive in light of *Bruen*. There was *no* citation to any relevant laws around the time of the enactment of the Second Amendment, and only two citations to laws before or around the enactment of the Fourteenth Amendment. *Maryland Shall Issue* cited to six ordinances or laws from the late 1880 or 1890s, more than two decades after the enactment of the Fourteenth Amendment, which have little bearing on the understanding of the right to bear arms during the enactment of the Second Amendment or Fourteenth Amendment. *Bruen*, 142 S.Ct at 2133. Finally, *Maryland Shall Issue* cited to several early 20th century laws, a time period which the *Bruen* decision expressly chose not to consider, as they were not consistent with earlier law.

MOO at 12-13. Virtually nothing and certainly nothing new in the almost 1000 pages that Defendants have supplied with the instant Motion calls the Court's analysis, noted above, into question. These are arguments that are transparently a design to have this material presented to the Tenth Circuit, which is improper, even if it would change the Tenth Circuit's analysis, for this Court to consider as a factor for likelihood of success on appeal, because the Tenth Circuit is no more likely to disregard the Supreme Court's instruction in *Bruen* than this Court was.

Likewise, it is unfair for the Defendants' to ask this Court, while the appeal is pending, to reconsider the Court's decision regarding Plaintiff's standing. Plaintiff respectfully offers that that Court misapprehended several things from Plaintiff's perspective as well. First, Plaintiff misunderstood the Court's understanding that playgrounds and parks are not commonly one unit. That is to say, Plaintiff is unaware of public playgrounds, not attached to a school, in Bernalillo County and Albuquerque that are not found within the boundaries

of a public park.  Likewise, Plaintiff understood Civic Plaza to be "[a] large open area usu. with grass and trees, esp. in a city or town, for public recreation." PARK, Black's Law Dictionary (11th ed. 2019).  Plaintiff respectfully proffers, here to the Court, the he absolutely intends to frequent all of these parks, <u>again, in the future</u>, but that he is prevented from doing in the future by the SAPHO. And, that all of these locations, as he done in the past, he would like to be armed when he again takes his 2-year child to play again on the playground equipment in these now increasingly dangerous areas of Albuquerque. But, in the context, that these are aspects of the case already involved in the appeal, Plaintiff understands must be addressed based upon the record on appeal rather than trying to shoehorn new evidence in under the guise of a motion to stay pending appeal.

**ARGUMENT**

I. **The Court has Limited Authority to Take Action on the Preliminary Injunction While the Appeal Is Pending.**

It is well established "that a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58, 103 S. Ct. 400, 74 L. Ed. 2d 225 (1982) (per curiam); *see also Barnes v. Sec. Life of Denver Ins. Co.*, No. 18-cv-718-WJM-SKC, 2019 U.S. Dist. LEXIS 4037, 2019 WL 142113, at *1 (D. Colo. Jan. 9, 2019) ("While an interlocutory appeal is pending, jurisdiction generally transfers from the district court to the court of appeals." (*citing Griggs*, 459 U.S. at 58)).

However, there are pertinent limitations on this transfer of jurisdiction. "First, no transfer occurs if the appeal is taken from a non-appealable order. Second, *the transfer affects only those*

*aspects of the case involved in the appeal*. Thus, when an appeal is taken from a limited interlocutory ruling, as opposed to one that affects the litigation as a whole, the district court may proceed with the case." *Howard v. Mail-Well Envelope Co.*, 150 F.3d 1227, 1229 (10th Cir. 1998) (citations omitted) (emphasis added). "Even when an order is appealable, the district court is divested of control only over 'those aspects of the case involved in the appeal.'" *Barnes* at *2-3 (quoting *Howard*, 150 F.3d at 1229). Here, because the Motion for a Stay specifically asks this Court to reconsider its prior grant of the preliminary injunction based upon a rehash of the aspects of the case *already involved in the appeal* this Court cannot and should not reconsider its prior decision until the case transfers back from the Court of Appeals. Here, this means this Court is prohibited from granting relief regarding the preliminary injunction that divests the appellate court of its jurisdiction by eliminating or materially altering the controversy. *See Pueblo of Pojoaque v. State,* 233 F. Supp. 3d 1021, 1091 (D.N.M. 2017). In *Pojoaque* Judge Browning, explicitly clarified that the reconsideration sought by the Defendants, here, to vacate a preliminary injunction, is outside of a district court's jurisdiction stating that "[i]t follows that the pendency of an interlocutory appeal from a PI divests the district court of its jurisdiction to vacate or dissolve the injunction. *Pueblo of Pojoaque v. State*, 233 F. Supp. 3d 1021, 1091 (D.N.M. 2017)

  **II.  The Defendants' Motion Does Satisfy the Four Factors of *Hilton* for a Stay Pending Appeal**

  As this Court recited in the Order staying the injunction pending briefing on the motion to stay the Defendant must satisfy four factors for the relief they seek being: (1) whether the stay applicant has made a strong showing that they are likely to succeed on appeal; (2) whether the stay applicant will be irreparably injured without a stay; (3) whether issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) whether public interest weighs in favor of granting or denying the stay. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

### A.     Defendants are Unlikely to Succeed on Appeal

To be perfectly clear, Defendants are asking this Court to ignore its sound analysis of applying *Bruen's* clear holdings rejecting the broad application of sensitive places stating that "expanding the category of "sensitive places" simply to all places of public congregation that are not isolated from law enforcement defines the category of "sensitive places" far too broadly. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 31, 142 S. Ct. 2111, 2134, 213 L. Ed. 2d 387 (2022). It especially worth noting that Defendants' reliance on the Second Circuit's pronouncement of "overreading of *Bruen*" by District Court in *Antonyuk v. Chiumento*, 2023 WL 8518003, at *62 (2d Cir. Dec. 8, 2023) becomes unpersuasive given that it was the Second Circuit that was reversed by the Supreme Court in *Bruen*.

To be sure there is a distinct, politically-charged debate raging in the Nation and in the Courts, which is part of why the Second Circuit's holding to narrowly interpret *Bruen* is suspect stating that "the appropriate figure in this instance is not the percentage of the nation's *total* population that was affected by city park firearms restrictions, but rather the percentage of the *urban* population that was governed by city park restrictions." *Antonyuk v. Chiumento*, 2023 WL 8518003, at *62 (2d Cir. Dec. 8, 2023)(emphasis in original.) That statement from the Second Circuit finds no support in *Bruen*. Especially, when what does find support in *Bruen* is the Supreme Court's citation to D. Kopel & J. Greenlee, The "Sensitive Places" Doctrine, 13 Charleston L. Rev. 205, 229–236, 244–247 (2018), which does not support the Second Circuit's expansion of parks as an analogue to fairs and markets.

Thus, the critical question that this Court has correctly addressed, at least as far as parks are concerned, that the Second Circuit gets wrong, is whether the regulation is consistent with the <u>*Nation's*</u> (presumably the Supreme Court is not indicating some small percentage of the Nation in

this test) history and tradition. And in this regard the Second Circuit's decision which is based upon the premise of crowds of people gathering at fairs and markets flies in the face of the statement from the Supreme Court that "[p]ut simply, there is no historical basis for New York to effectively declare the island of Manhattan a "sensitive place" simply because it is crowded and protected generally by the New York City Police Department. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 31, 142 S. Ct. 2111, 2134, 213 L. Ed. 2d 387 (2022).  Rather, the District Court in that case, performed the Court *Bruen* analysis that this Court should follow to be consistent with *Bruen* and that the Tenth Circuit is more likely to follow which is a survey of the Nation's (considered as a whole) history and tradition to find that:

> In any event, even if the number and geographical origins of these city laws *326 (when combined with the two state laws previously mentioned) were sufficient to constitute a tradition that was *established*, they do not constitute a tradition that was *representative* of the Nation. As explained earlier in this Decision, as of 1890, the five cities in question (New York City law, Philadelphia law, Chicago law, St. Louis law, and St. Paul law) comprised about 6.8 percent of the American population. *See* Dept. of Interior, Compendium of Eleventh Census: 1890 (1890). As of 1870, the two states in question (Texas and Missouri) contained only about 6.6 percent of the American population. *See* Dept. of Interior, Compendium of Ninth Census: 1870 (1870). The Court need not go back and recalculate the numbers so that they both come from the same census: it is confident that, under reasoning conduct in *NYSRPA*, the resulting percentage of less than 15 would not suffice to be representative of the Nation.

*Antonyuk v. Hochul*, 639 F. Supp. 3d 232, 325–26 (N.D.N.Y. 2022), *reconsideration denied sub nom. Antonyuk v. Nigrelli*, 2022 WL 19001454 (N.D.N.Y. Dec. 13, 2022), and *aff'd in part, vacated in part, remanded sub nom. Antonyuk v. Chiumento*, 2023 WL 8518003 (2d Cir. Dec. 8, 2023).  This Court's analysis and logic regarding the Plaintiff's likelihood of success is more consistent with *Bruen* than the Second Circuit's inconsistent decision in *Antonyuk* and therefore, a better indicator of the likelihood of Defendants' success in the appeal in the Tenth Circuit.

Finally, Defendants equate their likelihood of success to maintaining the initial status quo while the appeal proceeds, but this is far from accurate and while the Court may very well find that there is an interest in maintaining the initial status quo because there is substantial question about the correct application of *Bruen* it should not equate that question to likelihood of success as the Defendants invite here.  Rather, in considering the application for a stay, in light of the fact that reconsideration would improperly divest or alter the proceedings before the Tenth Circuit, this Court could reasonably agree with the other District Courts cited by Defendants including the North District of Texas stating that "*Bruen* left open a critical doctrinal question concerning the proper historical lens," and thus the dispute was "open to differing conclusions"); *Firearms Policy Coalition, Inc. v. McCraw*, 623 F. Supp. 3d 740, 757 (N.D. Tex. 2022).  Plaintiff does not agree that this question is as murky as those District Courts found it to be or certainly as open to obviously inconsistent interpretation as the Second Circuit has decided it is and thus, opposed the instant Motion, but would certainly understand if this Court stayed the injunction pending appeal, the for practical reasons that: 1) the *We the Patriots* consolidated cases denying the same injunction at issue are already on appeal on the same questions, being likely to be consolidated and 2) this moots the question regarding whether the government can continue to enforce what the Court has determine is likely unconstitutional regulation against everyone but Plaintiff.

    **B.**    **The Non-Merits Factors Do Not Support a Stay**

As an initial matter, it absolutely *can be* disputed that New Mexico will suffer irreparable injury if it is enjoined from engaging what the Court has determined is likely unconstitutional action.  Moreover, the Tenth Circuit has been clear on this point regarding the government's assessment of speculative harm to the public stating In the Tenth Circuit, "the [government's] potential harm must be weighed against [plaintiffs'] actual [constitutional] injury." *Summum v.*

*Pleasant Grove City*, 483 F.3d 1044, 1056 (10th Cir. 2007) *rvs'd other grounds by* 555 U.S. 460 (2009). And the recent Dissent of Justice Alito, joined by Justices Thomas and Gorsuch, is persuasive in this regard stating:

> the Government offers a series of hypothetical statements that a covered official *might* want to make in the future and that, it thinks, *might* be chilled. Application 36–38. But hypotheticals are just that—speculation that the Government "*may* suffer irreparable harm at some point in the future," not concrete proof. *White*, 458 U.S. at 1302, 103 S.Ct. 1 (emphasis added). And such speculation does not establish irreparable harm. *Nken*, 556 U.S. at 434, 129 S.Ct. 1749; see also *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414, n. 5, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013)

*Murthy v. Missouri*, 2023 WL 6935337, at *2 (U.S. Oct. 20, 2023). Here, Defendants offer that the irreparable harm of gun violence will occur if they are enjoined from enforcing the PHO. Yet, this speculation is betrayed by the invocation, again, of the City of Albuquerque's nearly identical attempt to regulate parks for more than the last 3 years. Assuming *arguendo*, that City of Albuquerque could enact its Administrative Orders without violating the provision of the New Mexico Constitution that prohibits municipal regulation of firearms (a point which is undeveloped before this Court and undecided by the state district court in the pending matter), the City of Albuquerque has not been enjoined by the state district court enforcing its prohibition on the carry of firearms in public parks and that order has done nothing to curb gun violence in parks in over 3 years, such that the Defendants here felt compelled to enact a nearly identical prohibition. Assuming that repeating the same action will produce a different result is not just rank speculation, it is Einstein's definition of insanity.

As previously raised in the Plaintiff's motion he has established that he intends to visit the parks at issue in the future and is prevented from doing so armed by the PHO. His loss of his constitutionally protected freedom is therefore real and present constituting irreparable harm. That is not the question pending before this Court because this Court has already correctly applied Tenth

Circuit precedent to find "[t]he Tenth Circuit has ruled that violations of individual rights guaranteed under the Constitution constitute irreparable harm. *Aposhian v. Barr*, 958 F.3d 969, 990 (10th Cir. 2020) (collecting cases)."

Moreover, as to public interest this Court has correctly applied the Tenth Circuit's holding in *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) that "[a]s to the fourth and final factor, 'it's always in the public interest to prevent the violation of a party's constitutional rights.' *Id.* at 806-07." MOO at 18.

## CONCLUSION

Because this Court should not engage in reconsideration of the granted preliminary injunction and because Defendants have failed to satisfy all 4 of the factors for a stay pending appeal this Court should deny the Motion.

Respectfully submitted this 12th day of December 2023.

        WESTERN AGRICULTURE, RESOURCE
        AND BUSINESS ADVOCATES, LLP

        */s/ A. Blair Dunn*
        A. Blair Dunn, Esq.
        Jared R. Vander Dussen, Esq.
        400 Gold Ave SW, Suite 1000
        Albuquerque, NM 87102
        (505) 750-3060
        abdunn@ablairdunn-esq.com
        warba.llp.jared@gmail.com


        Zach Cook, LLC

        */s/ Zach Cook*
        Zach Cook
        1202 Sudderth # 425
        Ruidoso, NM 88345
        (575) 937-7644
        zach@zachcook.com

CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2023, I filed the foregoing via the CM/ECF causing all parties of record to be served electronically.

*/s/ A. Blair Dunn*
A. Blair Dunn, Esq.