IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES SPRINGER,

    Plaintiff,

vs.                                                    No. 1:23-cv-00781-KWR-LF

MICHELLE LUJAN GRISHAM,
OFFICE OF THE GOVERNOR,
PATRICK ALLEN, and
NM DEPARTMENT OF HEALTH,

    Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF EMERGENCY MOTION
FOR STAY PENDING APPEAL AND CLARIFICATION**

Defendants Governor Michelle Lujan Grisham, Secretary Patrick M. Allen, and the New Mexico Department of Health (collectively, "Defendants"), by and through their counsel of record, hereby submit their reply in support of their Emergency Motion for Stay Pending Appeal and Clarification [Doc. 21] (the "Motion"). In support thereof, Defendants state as follows.

**INTRODUCTION**

On December 8, 2023, Defendants moved this Court to stay its December 5, 2023, Memorandum Opinion and Order [Doc. 19] to the extent it enjoins enforcement of the public health order ("PHO") while Defendants can pursue an appeal or, alternatively, clarify that the injunction only applies to Plaintiff. *See* Motion. Defendants requested, if the motion convinced the Court to reconsider and reverse its preliminary injunction, that the Court grant that relief in lieu of a stay. *See id.* at 1 n.1. On December 11, this Court issued an Order temporarily staying its preliminary injunction and asking the parties to address "whether the Court has discretion to reconsider and vacate a preliminary injunction after a notice of appeal was filed." [Doc. 22]. For the reasons set

out below and in the Motion, Defendants respectfully request that the Court (a) stay its preliminary injunction while Defendants pursue review in the Tenth Circuit; (b) issue an indicative ruling stating that the Court would dissolve the preliminary injunction upon remand; and (c), alternatively, clarify that the injunction applies only to Plaintiff.

## DISCUSSION

**I.  Defendants have a strong likelihood of succeeding on appeal**

    **a.  Plaintiff has failed to demonstrate standing to seek injunctive relief against the PHO's temporary restrictions on firearms**

As explained in the Motion, Plaintiff failed to show that he has standing to seek a preliminary injunction because he did not present evidence demonstrating that he intended to visit affected parks in the future—let alone the imminent future. Motion at 5-8. Nothing in Plaintiff's Response in Opposition to the Emergency Motion for Stay Pending Appeal and Clarification [Doc. 26] (the "Response") changes that fact. While Plaintiff now "proffers" that "he absolutely intends to frequent all of these parks, again, in the future," Response at 3 (emphasis omitted), this is mere argument of counsel and not evidence that the Court can consider in determining whether Plaintiff has standing to seek a preliminary injunction. *See Boles v. Colo. Dep't of Corr.*, No. 22-1086, 2023 WL 1463248, at *5 (10th Cir. Feb. 2, 2023) (unpublished) ("Preliminary injunctive relief requires evidentiary support."); *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1061 (10th Cir. 2009) (recognizing that "the argument of counsel is not evidence" ); *see also Engility Corp. v. Daniels*, No. 1:16-cv-02473, 2016 WL 7034976, at *12 (D. Colo. Dec. 2, 2016) (rejecting the defendants' unsupported factual assertions on a preliminary injunction motion because "argument of counsel is not evidence" (citation omitted)). Likewise, Plaintiff makes no effort to present any evidence showing that enjoining the PHO would redress his injury in light of the City of Albuquerque's separate regulations. *See generally* Response.

Given the foregoing, the Court should reconsider its previous conclusion that Plaintiff has standing to obtain a preliminary injunction against the PHO's restriction on firearms in Albuquerque and Bernalillo County parks.[1]

### b. Plaintiff has not demonstrated a clear and unequivocal right to a preliminary injunction on the merits of his Second Amendment claim

Defendants explained in their Motion that they are very likely to win on appeal because Plaintiff has not established a likelihood of success on the merits of his Second Amendment claim at all—let alone the "clear and unequivocal" merits showing required to obtain the "extraordinary remedy" of a preliminary injunction. *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (citation omitted). As another judge in this district concluded in considering a separate challenge to the PHO, "it cannot be said that Plaintiffs' right to relief is 'clear and unequivocal.'" *We the Patriots, Inc. v. Lujan Grisham*, No. 1:23-cv-00773-DHU-LF, 2023 WL 6622042, at *9 (D.N.M. Oct. 11, 2023) (quoting *Diné Citizens*, 839 F.3d at 1281)), *appeal filed*, Nos. 23-2166, 23-2167, 23-2185 (10th Cir. Oct. 20, 2023). In addition to *We the Patriots*, two other federal district courts, and now the Second Circuit, have all rejected similar challenges to parks restrictions at the preliminary injunction stage. *See* Motion at 8-9 (citing cases). Indeed, given the growing consensus among courts that parks are sensitive places in which the government may regulate firearms, it is Defendants whose entitlement to a stay is unequivocal. Even Plaintiff appears, in some portions of his response, to recognize that a stay is appropriate in these circumstances. *See, e.g.*, Response at 7 ("Plaintiff . . . would certainly understand if this Court

---

[1] The Court need not consider Plaintiffs' unsupported factual assertions regarding his standing to challenge the PHO's restriction of firearms in playgrounds, Response at 2-3, as Plaintiff has not moved for reconsideration or any other relief regarding the Court's December 5, 2023, memorandum opinion and order.

stayed the injunction pending appeal[.]"). And in those portions where he appears to continue to resist the entry of a stay, none of his arguments has merit.

*First*, Plaintiff suggests that the Tenth Circuit is likely to find the decision of its sister circuit in *Antonyuk v. Chiumento*, No. 22-2908, 2023 WL 8518003 (2d Cir. Dec. 8, 2023), less authoritative than the district court decision that the Second Circuit (largely) vacated in that case. *See* Response at 6. That is baseless. To begin with, a Second Circuit decision is on its face far more likely to influence the Tenth Circuit's approach than a decision of one district court judge in New York, particularly given the Tenth Circuit's caution against creating circuit splits. *See, e.g.*, *United States v. Thomas*, 939 F.3d 1121, 1130 (10th Cir. 2019) (surveying reasons to avoid splits and concluding that "[w]e should not create a circuit split merely because we think the contrary arguments are marginally better").[2] Moreover, any suggestion that this particular district court opinion might be persuasive is undercut by the fact that the court could not even agree with itself: over the course of ten weeks, it issued three decisions and took a different approach in each, both as to methodology and many of its conclusions. *Compare Antonyuk v. Bruen*, 624 F. Supp. 3d 210 (N.D.N.Y. 2022), *with Antonyuk v. Hochul*, 635 F. Supp. 3d 111 (N.D.N.Y. 2022), *and Antonyuk v. Hochul*, 639 F. Supp. 3d 232 (N.D.N.Y 2022); *see also* Joseph Blocher & Eric Ruben, *Originalism-by-Analogy and Second Amendment Adjudication*, 133 Yale L.J. 99, 139-40 (2023) (tracing "shifting methodologies" across the three *Antonyuk* district court opinions); *id.* at 140-41 (surveying "confusion" in district court's resulting conclusions—including, for example, that "[b]ans on guns in places of worship were unconstitutional in [its first opinion], constitutional in

---

[2] There is, of course, no equivalent principle that militates for following a district court opinion from another circuit (let alone one that the sister circuit vacated).

[its second], and unconstitutional again in [its third]" and "[b]ans on guns in children's summer camps were unconstitutional in [its first and second opinions], but constitutional in [its third]").[3]

*Second*, Plaintiff argues that the Second Circuit's analysis is inconsistent with *Bruen*'s instruction that New York cannot "effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the [police]." *See* Response at 6 (quoting *N.Y. State Rifle & Pistol Ass'n, v. Bruen*, 597 U.S. 1, 31 (2022)); *see also id.* at 5. But that is not what the Second Circuit did. Instead, it concluded that there was a centuries-long, specific tradition of "regulating firearms in quintessentially crowded areas and public forums," such as "fairs and markets," *Antonyuk*, 2023 WL 8518003, at *58-59, and held that a prohibition on guns in urban parks sat comfortably within this tradition: "As urban public parks took root as a new type of public forum [in the late nineteenth century], cities continued the tradition of regulating firearms in historical public forums, such as fairs and markets, to likewise keep these new public spaces, urban parks, peaceable." *Id.* at *61. In other words, the Second Circuit accepted that this tradition justified prohibiting guns in Central Park and other parks in New York City—not that it justified a blanket prohibition throughout all of Manhattan.

*Third*, Plaintiff quibbles with the Second Circuit's view that the relevant comparison when assessing the representativeness of urban parks restrictions is urban populations, not the entire

---

[3] Plaintiff also suggests that this Court should deem the Second Circuit's decision "unpersuasive" simply because "it was the Second Circuit that was reversed . . . in *Bruen*." Response at 5. The notion that the Tenth Circuit or this Court should disregard all Second Circuit decisions on Second Amendment issues, no matter how well-reasoned, simply because the decision of a different panel considering a different issue under different controlling law was reversed in *Bruen*, is self-evidently mistaken.

national population. *See* Pl. Resp. at 5.[4] But that is simply a matter of common sense: if a court were examining the regulatory approach of states to activity on an underground public transit system, it would not make sense to assign significance to the absence of regulations in Wyoming or Hawai'i. In any event, the more important aspect of *Antonyuk*'s analysis regarding a population-based approach is its conclusion that a cramped focus on relative population size is fundamentally unsound—and at odds with *Bruen*. "Disqualifying proffered analogues based only on strict quantitative measures such as population size absent any other indication of historical deviation would turn *Bruen* into the very 'regulatory straightjacket' the Court warned against." *Antonyuk*, 2023 WL 8518003, at *43 (quoting *Bruen*, 597 U.S. at 30).

*Fourth*, Plaintiff suggests that this Court should ignore the robust historical tradition on which Defendants rely because, in his view, the copies of historical laws Defendants submitted are "exhibits of additional evidence" that should have been provided earlier. Response at 1. But laws are not subject to the same constraints on the timing of submission as factual evidence (such as the matter of where Plaintiff intends to carry a firearm). *See, e.g.*, *Baca v. Dep't of the Army*, 983 F.3d 1131, 1140 (10th Cir. 2020) (stating that "[we] allow a party to provide new legal authority on appeal for the position that he advanced below" and permitting consideration of Army and Department of Defense policies raised for first time on appeal because they were "new legal authority in support of" plaintiff's claim "rather than a new theory of relief" (cleaned up)); *see also, e.g.*, *Costantino v. TRW, Inc.*, 13 F.3d 969, 981 n.13 (6th Cir. 1994) ("Plaintiffs are now citing to statutory authority in support of their theory to which they apparently did not cite in the court below. In [arguing that this is improper, in] effect, Defendants are urging us to adopt a rule

---

[4] Plaintiff disregards the fact that *Antonyuk* was considering a far smaller group of historical restrictions specific to parks—just the eight city ordinances New York had presented—than Defendants have presented in this Court. *See Antonyuk*, 2023 WL 8518003, at *61.

prohibiting parties from submitting new citations of authority at the appellate level. Such a rule would undermine one of the fundamental purposes of our adversarial legal system, that of determining the legal premises properly applicable to a case."); *United States v. Rapone*, 131 F.3d 188, 196 (D.C. Cir. 1997) (rejecting argument that defendant could not cite, for the first time on appeal, statute entitling him to jury trial, where he had repeatedly asked for jury trial in district court and on appeal was "simply offer[ing] new legal authority for th[at] position"); *Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1286 n.4 (10th Cir. 2018) (following *Rapone*); *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 773 n.20 (7th Cir. 2010) ("A litigant may cite new authority on appeal."). In any event, Defendants had already (prior to the filing of this motion) cited a large proportion of the historical laws they provided, either directly or through reference to the collections of historical laws considered by other district courts in challenges to firearms prohibitions in parks. [*See* Doc. 15 at 12-15].[5]

In sum, nothing in Plaintiff's response disturbs the conclusion that Defendants have a strong likelihood of success on appeal. And it is clear from the significant weight of authority in Defendants' favor—not to mention Plaintiff's suggestions of acquiescence—that the better course is to stay the preliminary injunction and maintain the status quo while the appeal proceeds.

---

[5] Plaintiff also suggest that the historical parks laws are almost all "unpersuasive" because those that appeared before 1866 were from one state and those that appeared from 1868 to 1878 were from three additional states. Response at 1-2. There are a host of errors underlying this suggestion, but because Plaintiff makes it only in passing, Defendants will mention just two. First, all of these laws are part of a historical tradition stretching back to the medieval Statute of Northampton, as *Antonyuk* found, *see* 2023 WL 8518003, at *58-65, so any suggestion that they came too late is mistaken. Second, six of the eight ordinances to which *Antonyuk* gave significant weight in its parks analysis were passed in the 1880s and 1890s, *see id.* at *56 n.69, 61, making Plaintiff's 1878 cutoff inexplicable. *See also District of Columbia v. Heller*, 554 U.S. 570, 605 (2008) (explaining that "examination of a variety of legal and other sources to determine *the public understanding* of a legal text in the period *after* its enactment or ratification" is "a critical tool of constitutional interpretation" (second emphasis added)); *Bruen*, 597 U.S. at 20 (quoting same).

**III.    The non-merits factors favor staying or dissolving the preliminary injunction**

Plaintiff's final arguments regarding the non-merits factors are similarly unpersuasive. Plaintiff's first argument that "it absolutely *can* be disputed that New Mexico will suffer irreparable injury if it is enjoined from engaging what the Court has determined is likely unconstitutional action," Response at 7, misses the mark, as it assumes the PHO's temporary restrictions will ultimately be found unconstitutional. Defendants' point, rather, is that should this Court or the Tenth Circuit later determine that the PHO's temporary restrictions on firearms in parks are, in fact, constitutional, Defendants and the State of New Mexico will have indisputably suffered irreparable injury if it cannot now enforce those restrictions. *See Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018) ("[T]he inability to enforce its duly enacted plans clearly inflicts irreparable harm on the state.").[6] This is not mere speculation—especially considering the current state of the record and caselaw.[7] *See* discussion *supra* Section II; Motion at 8-13. Likewise, the harm that would be visited on the public at large should Defendants be prevented from enforcing the PHO is not "rank speculation," Response at 8, when Defendants have provided several

---

[6] *See also Worth v. Jacobson*, No. 0:21-cv-1348, 2023 WL 3052730, at *3 (D. Minn. Apr. 24, 2023) (finding the irreparable harm factor weighed in favor of a stay because, although the court had concluded the law likely violated the Second Amendment, "there is a sufficient debate about the merits in this case and the substantial, difficult, and novel legal issues raised"); *Firearms Policy Coal. v. McCraw*, 623 F. Supp. 3d 740, 757 (N.D. Tex. 2022) (staying injunction pending appeal in Second Amendment case because a state "necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws," and the state's "interest and harm merges with that of the public").

[7] The Court should not be distracted by Plaintiff's citation to the *dissent* from a grant of an application of stay pending appeal in *Murthy v. Missouri*, 2023 WL 6935337 (U.S. Oct. 20, 2023). First, a dissent is obviously not controlling. Second, the purported irreparable harm in that case did not involve the government's inability to enforce its laws—unlike the situation here.

examples of recent shootings in Albuquerque parks and literature demonstrating the chilling effect of guns on the public's use and enjoyment of parks.[8] *See* Motion at 14 nn. 12 & 13.

On the other hand, it remains unclear, *at best*, whether Plaintiff will suffer any irreparable harm if the Court stays the preliminary injunction. As previously explained, there is no evidence in the record suggesting that Plaintiff (a Torrance County resident) will visit an Albuquerque park in the near future. Motion at 14-15. And even if there were, Plaintiff fails to show how his temporary inability to carry a firearm while he occasionally visits parks in another county amounts to "substantial injury." The fact that other circuits have stayed injunctions of similar parks restrictions pending appeal suggests that those courts did not find the potential injury to those plaintiffs in not being able to carry firearms in certain parks substantial enough to overcome the other factors warranting a stay. *See Antonyuk v. Hochul*, No. 22-2908, 2022 WL 18228317, at *1 (2d Cir. Dec. 7, 2022) (concluding that applicable factors weighed in favor of a stay pending appeal)[9]; *Koons v. Att'y Gen. of N.J.*, No. 23-1900, Dkt. 23 (3d Cir. June 20, 2023) (same).[10] Accordingly, the non-merits factors weigh in favor of staying the preliminary injunction.

---

[8] True, it is possible the City of Albuquerque may continue to enforce its restriction at those parks where it applies, as Plaintiff observes. Response at 8. But that does not mean that prohibiting Defendants—who have greater resources than the City of Albuquerque—from enforcing the PHO will not increase the likelihood of shootings and other harms going forward.

[9] As noted, *see* discussion *supra* Section II, the Second Circuit has since strengthened the arguments for a stay here even more by reversing the district court's grant of a preliminary injunction as to New York's parks restrictions.

[10] District courts addressing motions to stay injunctions pending appeal in Second Amendment cases have likewise concluded that the potential harm to the plaintiff was not significant enough to warrant denial of a stay. *See, e.g.*, *Fraser v. ATF*, 2023 WL 5617894, at *4 (E.D. Va. Aug. 30, 2023) (noting that although the plaintiffs "have a strong interest in exercising their constitutional rights and the stay will delay the date on which they may do so," a stay pending appeal would not cause them "substantial[] injur[y]"); *Firearms Policy Coal.*, 623 F. Supp. 3d at 757 ("Though Plaintiffs' interest in the vindication of their Constitutional rights suffers while the judgment is stayed, the stay is necessary to militate the possible negative effects of relying on the injunction

### IV. The Court should issue an indicative ruling stating it would dissolve the preliminary injunction upon remand

Although the Tenth Circuit has not yet opined on the issue, the Court has valid concerns that it does not have jurisdiction to dissolve the preliminary injunction now that Defendants have filed a notice of appeal. *See Pueblo of Pojoaque v. State of New Mexico*, 221 F. Supp. 3d 1289, 1298 (D.N.M. 2016); [Doc. 22 at 2]; *but see In re Guantanamo Bay Detainee Litig.*, 706 F. Supp. 2d 120, 123 (D.D.C. 2010) (noting that the at least one D.D.C. judge and the Eleventh Circuit have suggested that a court may dissolve an injunction pending appeal pursuant to Fed. R. Civ. P. 62(d)). Regardless, the Court indisputably has the authority to issue an "indicative ruling" pursuant to Rule 62.1 of the Federal Rules of Civil Procedure, which provides: "If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may . . . state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." *See generally Pueblo of Pojoaque*, 221 F. Supp. 3d at 1298 (discussing law of "indicative rulings"). "If the court makes such an indication, the court of appeals may remand for further proceedings but retains jurisdiction unless it expressly dismisses the appeal." *Id.* at 1299 (cleaned up).

Given the substantial record now in front of this Court and the Second Circuit's holding in *Antonyuk*, Defendants respectfully request that the Court stay its preliminary injunction pending appeal and issue an indicative ruling stating that it would grant Defendants' request to dissolve the

---

while it is subject to appellate review and possible reversal."); *Worth*, 2023 WL 3052730, at *4 ("As this Court has interpreted this rapidly developing and uncertain area of the law, entering the stay . . . will affect the Plaintiffs' ability to exercise their rights . . . [b]ut this factor does not outweigh all the others.").

injunction if the Tenth Circuit remands for that purpose.[11] *See Pueblo of Pojoaque*, 221 F. Supp. 3d at 1297 (stating that the decision to reconsider a preliminary injunction "should account for the fact that a preliminary injunction is often granted under pressured time constraints, on limited evidence and expedited briefing schedules" (cleaned up)).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court stay its preliminary injunction while Defendants pursue review in the Tenth Circuit and issue an indicative ruling stating that the Court would dissolve the preliminary injunction upon remand. Alternatively, Defendants request that the Court clarify that the injunction only applies to Plaintiff.

Respectfully submitted,

*/s/ Holly Agajanian*
**HOLLY AGAJANIAN**
*Chief General Counsel to Governor Michelle Lujan Grisham*
**KYLE P. DUFFY**
*Deputy General Counsel to Governor Michelle Lujan Grisham*
490 Old Santa Fe Trail, Suite 400
Santa Fe, New Mexico 87501
(505) 476-2200
Holly.Agajanian@exec.nm.gov
Kyle.Duffy@exec.nm.gov

---

[11] While Rule 62.1 permits the Court to instead state that "motion raises a substantial issue," Defendants do not seek this relief in light of commentary that identifies potential risks. The Advisory Committee Notes observe that "[r]emand is in the court of appeals' discretion" and "[t]he court of appeals may remand all proceedings, terminating the original appeal." *See* Fed. R. App. P. 12.1 advisory committee's note to 2009 adoption. The Notes caution that, in the "postjudgment context," this should only be the procedure if the movant "has clearly stated its intention to abandon the appeal." *Id.* "The danger," they explain, "is that if the initial appeal is terminated and the district court then denies the requested relief, the time for appealing the initial judgment will have run out and a court might rule that the appellant is limited to appealing the denial of the postjudgment motion." *Id.*; *see also* 16A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3958.10 (5th ed. 2020). Without certainty that they will face no such potential risk in the prejudgment context, Defendants respectfully request that the Court only indicate whether it would dissolve the preliminary injunction upon remand.

SERPE ANDREWS, PLLC

<u>/s/ Cody R. Rogers</u>
Cody R. Rogers
2540 El Paseo Road, Suite D
Las Cruces, NM 88001
(575) 288-1453
crogers@jarmielaw.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 26, 2023, I filed the foregoing via the CM/ECF filing system, which caused all counsel of record to be served by electronic means.

Respectfully submitted,

<u>/s/ Holly Agajanian</u>
Holly Agajanian