**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

**October 1, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

JAMES SPRINGER,

      Plaintiff - Appellee Cross-
      Appellant,

v.

MICHELLE LUJAN GRISHAM;
PATRICK ALLEN; NEW MEXICO
DEPARTMENT OF HEALTH,

      Defendants - Appellants
      Cross-Appellees,

and

OFFICE OF THE GOVERNOR,

      Defendant - Cross-Appellee.

_____

BRADY CENTER TO PREVENT GUN
VIOLENCE; GIFFORDS LAW CENTER
TO PREVENT GUN VIOLENCE,
DISTRICT OF COLUMBIA; ILLINOIS;
CALIFORNIA; COLORADO;
CONNECTICUT; DELAWARE;
HAWAII; MAINE; MARYLAND;
MASSACHUSETTS; MICHIGAN;
MINNESOTA; NEVADA; NEW JERSEY;
NEW YORK; OREGON; RHODE
ISLAND; VERMONT; WASHINGTON;
WISCONSIN,

      Amici Curiae.

_____

Nos. 23-2192 & 23-2194
(D.C. No. 1:23-CV-00781-KWR-LF)
(D. N.M.)

## ORDER AND JUDGMENT[*]

_____

Before **HARTZ**, **EID**, and **FEDERICO**, Circuit Judges.

_____

The New Mexico Department of Health ("NMDOH") issued a public health order that, with limited exceptions, prohibited the possession of firearms in public parks and playgrounds within the City of Albuquerque and Bernalillo County. Shortly thereafter, James Springer, a resident of nearby Torrance County, New Mexico, sued various state officials in federal district court, seeking to enjoin enforcement of that order. He argued that the public health order violated his Second Amendment, First Amendment, and substantive due process rights.

In the proceedings below, the district court preliminarily enjoined enforcement of the portion of the public health order prohibiting the possession of firearms in public parks (the "parks restriction") but declined to enjoin enforcement of the order as it related to the prohibition on carrying firearms in playgrounds (the "playgrounds restriction"). The state officials appealed the grant of the preliminary injunction, and Springer cross-appealed the order to the extent it denied him full injunctive relief.

Because Springer lacks standing to challenge the public health order, we affirm in part, reverse in part, and remand with instructions to dissolve the injunction.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I.

On September 7, 2023, New Mexico Governor Michelle Lujan Grisham issued an executive order declaring a public health emergency due to increased rates of gun violence in New Mexico. The executive order directed various state agencies and departments, including the NMDOH, to coordinate "an effective . . . response to this public health emergency." App'x at 29. The very next day, pursuant to the executive order, the NMDOH issued the first in a series of public health orders prohibiting firearm possession in certain locations within New Mexico. With certain exceptions, the first public health order prohibited any person from possessing a firearm within New Mexico cities or counties experiencing high rates of gun violence as well as on state property, at public schools, and in public parks.

Immediately following the issuance of that order, James Springer filed a lawsuit in federal court, seeking an emergency temporary restraining order as well as a preliminary injunction enjoining enforcement of the NMDOH's public health order.[1] In his complaint, he named Governor Michelle Lujan Grisham, the Office of the Governor, Secretary Patrick Allen, and the NMDOH as defendants. But before the district court could rule on Springer's request for a temporary restraining order, the NMDOH amended its public health order. The new order, which the NMDOH issued on October 6, 2023, eliminated many of the restrictions on firearm possession

---

[1] Springer also sought other forms of relief, including damages, declaratory judgments, and a permanent injunction—none of which are at issue here. *See* App'x at 19–20.

that the original public health order had imposed and narrowed the scope of the remaining restrictions.  Because the amended order superseded all prior orders, including the one challenged, the district court denied Springer's request for a temporary restraining order as moot.

Springer then filed a new motion for a preliminary injunction on October 26, 2023, challenging the October 6 public health order.  In particular, Springer sought to enjoin enforcement of the portion of the amended public health order that prohibited the possession of "a firearm . . . in public parks or playgrounds within the City of Albuquerque or Bernalillo County" as facially unconstitutional under the First Amendment, the Second Amendment, and the Due Process Clause of the Fourteenth Amendment.  *Id.* at 52.[2]  He argued that there is no "historical tradition of firearm regulation" in public parks or playgrounds sufficient to justify the public health order's complete prohibition of firearms under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).  App'x at 44.

---

[2] The full text of the challenged provision provides:

No person, other than a law enforcement officer or licensed security officer, or active duty military personnel shall possess a firearm, as defined in NMSA 1978, Section 30-7-4.1, either openly or concealed, in public parks or playgrounds within the City of Albuquerque or Bernalillo County, except in the City of Albuquerque's Shooting Range Park and areas designated as a state park within the state parks system and owned or managed by the New Mexico Energy, Minerals and Natural Resources Department State Parks Division, or the State Land Office.

App'x at 52.

In support of the motion, Springer filed a declaration indicating that (1) he is "a resident of Torrance County, New Mexico," (2) he has "been prohibited" by the public health order "from lawfully carrying [his] firearm for [his] and [his] family's protection for most of the months of September and October at the parks that [he] attend[s] for non-scholastic youth sporting events or just to enjoy the beautiful fall weather in Albuquerque during the balloon fiesta," and (3) he "planned to organize and attend a rally in support of the Second Amendment to exercise [his] First Amendment rights by engaging in the expressive conduct of openly carrying a firearm in Civic Plaza but ha[s] been prohibited from doing so" by the order. *Id.* at 55.

The district court reached a mixed result with respect to Springer's motion. The court first concluded that Springer "ha[d] established standing to challenge the restriction on carrying firearms in public parks" because he "clearly assert[ed] . . . that he intends to carry firearms in public parks in Albuquerque [and] Bernalillo County" but is prohibited from doing so by the order. *Id.* at 91–92. It then granted a "preliminary injunction enjoining the public health order to the extent it prohibits carrying firearms in public parks in Bernalillo County and Albuquerque, New Mexico," after concluding Springer was likely to succeed on his Second Amendment claim. *Id.* at 85. The court explained that the defendants did "not demonstrate a historical tradition of prohibiting the carrying of firearms in public parks" as was their burden under *Bruen. Id.* With respect to the remaining restriction, however, the court declined "to enjoin the public health order to the extent it prohibits firearms in

playgrounds" because Springer had not established standing. *Id.* According to the district court, Springer lacked an injury—a necessary element for standing—because he did "not assert that he has ever, or intends to, carry firearms in playgrounds." *Id.* at 91. "Even if he had," the district court explained, "the [g]overnment ha[d] demonstrated that playgrounds are analogous to 'sensitive places' where there is a longstanding history of firearm regulation." *Id.* at 86. The court also held that Springer failed to demonstrate a likelihood of success on his First Amendment and due process claims because his argument "lack[ed] sufficient citation to case law or analysis" to put the issues before the court. *Id.* at 100–01. It therefore denied Springer's motion as to those two claims.[3]

The defendants appealed the grant of a preliminary injunction against the public parks restriction, and Springer cross-appealed the order to the extent it concluded he lacked standing and denied the full extent of injunctive relief requested. The defendants also sought a stay of the preliminary injunction pending appeal, but both the district court and our Court denied the defendants' request.

During the pendency of the appeal, our Court decided *We the Patriots, Inc. v. Grisham*, 119 F.4th 1253 (10th Cir. 2024), which involved a nearly identical challenge to the same NMDOH public health order. In *We the Patriots*, we held that the plaintiffs lacked standing to challenge the playgrounds restriction because of the existence of "several unchallenged City and County restrictions which appear to limit

---

[3] Springer "does not challenge that determination here," Aple. Op. Br. at 6, and therefore, we do not address that portion of the district court's ruling.

firearm possession in playgrounds." *Id.* at 1259.  As the panel explained, our Court could not "provide any meaningful relief" because, "regardless of our decision," the plaintiffs would "continue to be barred from carrying firearms in the proscribed places." *Id.* at 1260.  Therefore, the plaintiffs' injury was not redressable, and they lacked standing.  *Id.*  With respect to the parks restriction, we held that the request for a preliminary injunction was moot because a district court in a different proceeding[4] had already universally "enjoined the full scope of the . . . public parks restriction"—the precise relief requested by the plaintiffs.  *Id.* at 1257.[5]

We consequently ordered the parties to file supplemental briefing addressing how our decision in *We the Patriots* affected this appeal.  *See* Order, Nos. 23-2192, 23-2194, at 2 (10th Cir., filed Dec. 4, 2024).  In their supplemental filing, the defendants argued that *We the Patriots* "compels the conclusion that Springer lacks standing to challenge" the public health order because the same overlapping firearm

---

[4] The parallel district court proceeding referenced in *We the Patriots* is the district court proceeding at issue in this appeal.  119 F.4th at 1257 (citing *Springer v. Grisham*, 704 F. Supp. 3d 1206, 1221–22 (D.N.M. 2023)).

[5] The conclusion that the grant of an injunction to a plaintiff in one case always moots a different plaintiff's subsequent request for a similar injunction in a different case may have been significantly undermined by the Supreme Court's recent decision in *Trump v. CASA, Inc.*, 606 U.S. _, 145 S. Ct. 2540 (2025).  In *CASA*, the Court held that federal courts lack the statutory authority to issue universal injunctions—equitable relief that "prohibits the [g]overnment from enforcing the law against *anyone*, anywhere."  *Id.* at 2548 n.1.  We need not decide the extent to which *CASA* may have abrogated *We the Patriots*, but we do note that the existence of other injunctions enjoining enforcement of the parks or playgrounds restriction against some plaintiffs does not moot Springer's request for injunctive relief here.

restrictions at issue in *We the Patriots* are still in place, meaning that Springer's injury is not redressable. Aplt. Supp. Br. at 1. Springer disagreed. While acknowledging *We the Patriots*'s general reasoning, he argued that *We the Patriots* is distinguishable because the overlapping firearm restrictions are not currently being enforced. According to Springer, without a credible threat of enforcement, these separate firearm prohibitions do not deny him standing.

## II.

We begin—and end—with standing. Before addressing the constitutionality of the public health order, we must first ensure that Springer has standing to challenge the public parks and playgrounds restrictions. He does not. We therefore lack jurisdiction to reach the merits of his Second Amendment challenge.

## A.

Article III of the Constitution confines the jurisdiction of federal courts to the resolution of "Cases" and "Controversies." "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (cleaned up). Standing, in turn, requires the plaintiff to "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Moreover, it is the plaintiff—as the party invoking federal jurisdiction—who "bears the burden of establishing standing." *Carney v. Adams*, 592 U.S. 53, 59

(2020). That burden, the Supreme Court has explained, tracks the showing required for other elements of a plaintiff's claim at different stages of the litigation. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "At the preliminary injunction stage, then, the plaintiff must make a 'clear showing' that []he is 'likely' to establish each element of standing." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

**B.**

Springer has not satisfied his burden of establishing standing for two independent reasons: (1) he does not allege concrete plans to visit a single specific park or playground subject to the public health order with a firearm, meaning he lacks an actual or imminent injury in fact, and (2) he has not shown that our Court can redress his alleged injury because separate, overlapping laws already prohibit the carrying of firearms in parks and playgrounds.[6]

---

[6] Although the public health order only "remain[ed] in effect for the duration of the public health emergencies declared," App'x at 53, Governor Grisham's decision to allow the public health order to expire on October 13, 2024, does not moot this case. Pursuant to "the voluntary cessation exception to mootness, a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Robert v. Austin*, 72 F.4th 1160, 1164 (10th Cir. 2023) (quoting *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019)). However, voluntary actions may nevertheless moot a case "if the defendant carries the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *Prison Legal News*, 944 F.3d at 881). The defendants do not contend that the public health order will not be re-issued in the future. *See* Aplt. Supp. Br. at 2. Therefore, the case is not moot.

**1.**

As noted above, Springer must show an "injury in fact" to establish standing. To satisfy the strictures of Article III, an injury must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (some internal quotation marks omitted). Moreover, "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013)).

Where, as here, the alleged injury is the threatened enforcement of a law or executive order, the Supreme Court has "held that a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [law], and there exists a credible threat of prosecution thereunder.'" *Id.* at 159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). The Supreme Court, however, has instructed that "'some day' intentions . . . do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564. Instead, a plaintiff must describe "concrete plans" and not merely a "vague desire" to undertake the proscribed conduct. *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).

Here, Springer's allegations fall well short of establishing "concrete plans" to visit any park or playground subject to the public health order. Start with the playgrounds restriction. Nothing in Springer's complaint or in his declaration

evinces an intent to visit a playground with a firearm.  He does not identify a single specific playground that he intends to visit, nor does he specify a date upon which he plans to make such a visit.  In fact, neither document even mentions the word "playground."  The closest Springer gets is in his verified motion where he states that he "wishes to carry firearms in . . . playgrounds" at some unspecified point in the future.  App'x at 46.

But that statement is nowhere near the level of specificity required to show imminence.  As we have held, "[s]peculative plans or vague intentions to *potentially* violate the challenged [law] are" simply "insufficient" to satisfy the requirement of imminent injury.  *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 110 (10th Cir. 2024) (emphasis in original); *see Lujan*, 504 U.S. at 564 (holding that a mere "intent" to visit certain countries with threatened species in the future was insufficient to confer standing because "such some day intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the actual or imminent injury" required for standing (internal quotation marks omitted)); *Summers*, 555 U.S. at 496 (concluding that a "vague desire" to visit several unnamed national forests in the future is not an imminent injury to confer standing).  Without more, we are left to speculate whether Springer will actually visit a playground covered by the public health order and, consequently, whether he faces an imminent injury.

We therefore agree with the district court that Springer "lacks standing to challenge the restriction on carrying firearms in playgrounds." App'x at 89.[7]

We, however, part ways with the district court's standing conclusion as it relates to the parks restriction. As noted above, the district court concluded that Springer demonstrated a sufficient injury in fact because he "clearly asserts that . . . he intends to carry firearms in public parks in Albuquerque or Bernalillo County" subject to the order and "there exists a credible threat of prosecution." *Id.* at 91–92. That conclusion was error. While Springer does mention that he visited and plans to visit parks in New Mexico, he does not allege any facts that establish a "concrete" plan to do so. Instead, his declaration merely states that he has "been prohibited" by the public health order "from lawfully carrying [his] firearm . . . for most of the

---

[7] Springer contends that the district court "misapprehend[ed] the facts surrounding the existence of the playgrounds at issue being an internal feature of the parks frequented by Plaintiff" when it concluded that he lacked standing. Aple. Op. Br. at 6. In Springer's view, he has standing because he "plans to attend parks in the future where playgrounds are an internal feature." Aple. Reply Br. at 6. But these two fleeting statements are insufficient to adequately present this argument. He does not cite legal authority, identify relevant allegations, or explain how playgrounds being an "internal feature" of some parks establishes an imminent injury. Because "we consider only those arguments in favor of standing that the plaintiffs have adequately briefed," we need not address this argument. *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 544 (10th Cir. 2016).

In any event, the mere suggestion that playgrounds are located within certain parks does not automatically provide Springer with standing. One can visit a park containing a playground without also entering the area consisting of the playground. Therefore, whether a playground is an internal feature of some parks Springer intends to visit makes no difference. Springer still must demonstrate a "concrete plan" to step foot on a playground subject to the order. *Summers*, 555 U.S. at 496. Because he has not done so, he lacks an imminent injury—an indispensable element of standing.

months of September and October at the parks that [he] attend[s] for non-scholastic

youth sporting events or just to enjoy the beautiful fall weather in Albuquerque

during the balloon fiesta." *Id.* at 55.

At most, this statement establishes that he has visited parks subject to the order

in the past.  But the mere fact that Springer "had visited" the parks in the past

"proves nothing" about whether Springer will visit the parks in the future.  *Lujan*,

504 U.S. at 564.  As the Supreme Court has explained, when a plaintiff seeks

forward-looking relief, past events "are relevant only for their predictive value."

*Murthy*, 603 U.S. at 59.  And here, Springer does not link his past visits to future

visits in any meaningful way.  He has not stated that the sports competitions or

balloon fiesta are recurring events, nor has he assured us that future iterations of

these recreational activities will take place in a park subject to the order.  In fact, he

has not identified "any particular [park]" where these activities occur, significantly

undermining his claim of imminent injury.  *Summers*, 555 U.S. at 495.  Therefore,

this statement alone does not establish standing.

Springer's other assertion fares no better.  He stated that he "planned to

organize and attend a rally in support of the Second Amendment to exercise [his]

First Amendment rights by engaging in the expressive conduct of openly carrying a

firearm in Civic Plaza but ha[s] been prohibited from doing so" by the order.  App'x

at 55.  But even assuming that Civic Plaza is a park subject to the order (something

that Springer does not explicitly allege), this "some day intention" is plainly

insufficient.  *Lujan*, 504 U.S. at 564.  He does not provide a "description of concrete

13

plans" for the rally or even identify when he plans to hold such a gathering. *Id.* These failures are fatal to the injury-in-fact requirement, just as they were in *Lujan*. *Id.* at 564–67; *see also LaFave v. Cnty. of Fairfax*, 149 F.4th 476, 485 (4th Cir. 2025) (holding that gun owners lacked standing to challenge a sensitive places restriction because they failed to identify an "event, or an area adjacent to one, that they've wanted to visit while armed since the ordinance's enactment").

Springer resists this conclusion. In his view, the fact that he mentioned his plan to visit parks subject to the order is enough. However, the Supreme Court has squarely rejected that position, explaining that "accepting a[] [mere] intention to visit . . . as adequate to confer standing to challenge any government action . . . would be tantamount to eliminating the requirement of concrete, particularized injury in fact." *Summers*, 555 U.S. at 496. Moreover, if a mere self-serving statement is all that is needed, then "any citizen could obtain standing . . . by merely 'self-declaring'" an intention to visit one of the regulated parks. *Sibley v. Obama*, No. 12-5198, 2012 WL 6603088, at *1 (D.C. Cir. Dec. 6, 2012) (per curiam) (unpublished). We decline to support a view of Article III that would allow litigants to transform any generalized grievance into a particularized and imminent injury with a flick of the pen. Article III, we believe, demands more. A party invoking our jurisdiction must show an actual "personal, particularized injury," *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013), and not just an artificially manufactured one so that we remain in our properly limited role of deciding "Cases" or "Controversies." Springer has not done so.

Consequently, we hold that Springer failed to demonstrate a sufficiently imminent injury in fact to challenge the public parks or playgrounds restriction.

**2.**

Besides failing to show an injury, Springer failed to demonstrate redressability because all of the playgrounds and parks that Springer alleges he intends to visit are "already subject to independent and unchallenged firearm carry prohibitions." *We the Patriots*, 119 F.4th at 1261.

When multiple laws overlap in the conduct they prohibit—and therefore cause the same injury—that injury may not be redressable when only one of the laws is challenged. *See Renne v. Geary*, 501 U.S. 312, 319 (1991) (suggesting that an injunction against enforcement of a statute would not redress a plaintiff's injury where there were "[o]verlapping enactments"); *We the Patriots*, 119 F.4th at 1260–61; *Bishop v. Smith*, 760 F.3d 1070, 1078 (10th Cir. 2014) ("[P]laintiffs fail to establish redressability [ ] when an unchallenged legal obstacle is enforceable separately and distinctly from the challenged provision.").

This principle of redressability holds true where, as here, the plaintiff does not allege that he is willing to violate the separate, overlapping restrictions. If a plaintiff challenges only one of several overlapping restrictions, he must demonstrate a willingness to violate the other restrictions to overcome the presumption that litigants "will conduct their activities within the law and so to avoid prosecution and conviction." *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974). Otherwise, a favorable decision will fail to redress the injury complained of because the plaintiff ultimately

15

will remain unable to engage in the desired conduct due to the separate, unchallenged restrictions.

Here, several overlapping laws appear to already prohibit the possession of firearms in public parks and playgrounds within the City of Albuquerque and Bernalillo County. As we recently explained in *We the Patriots*, state and local law ban firearm possession on playgrounds in these localities:

> First, a County ordinance plainly prohibits possession of firearms in "recreation facilit[ies]." Bernalillo Cnty. Ord., § 58-12(b)(27). Playgrounds are included in the definition of "recreational facilit[ies]." *Id.* at § 58-5. Also, the City applies New Mexico state law prohibitions on firearm carry in schools and universities to at least 25 playgrounds. City of Albuquerque Administrative Instructions No. 5-19 & 5-20; N.M. Stat. Ann. §§ 30-7-2.1(A) & (B)(2) (also prohibiting firearm carry in "any other public buildings or grounds, including playing fields and parking areas that are not public school property, in or on which public school-related and sanctioned activities are being performed."); *id.* at § 30-7-2.4(A) & (C)(2)(b) (also prohibiting firearm carry in "any other public buildings or grounds, including playing fields and parking areas that are not university property, in or on which university-related and sanctioned activities are performed."). Thus, we are faced with an apparent City prohibition.

119 F.4th at 1259 (emphasis omitted). And as the defendants point out, "multiple other restrictions prohibit firearms in city and county parks," including the parks Springer allegedly intends to visit. Aplt. Supp. Br. at 5. For instance, a Bernalillo County ordinance generally prohibits firearms in "any park," Bernalillo Cnty. Ord. § 58-12(b)(27), and the City of Albuquerque also prohibits firearms on "Open Space Lands," Albuquerque Code of Ords. § 5-8-6(G). Additionally, as discussed above, state law prohibits firearm carry on "any . . . grounds, including playing fields . . . that are not public school property . . . or university property." N.M. Stat. Ann.

§§ 30-7-2.1(A), (B)(2); *id.* § 30-7-2.4(A), (C)(2)(b).  Therefore, both the City of Albuquerque and Bernalillo County appear to already prohibit firearms in public parks.

As a result, even if Springer prevailed, he "could not legally carry [firearms] on playgrounds [or parks] because the municipal and county ordinances" would still bar him from doing so.  *We the Patriots*, 119 F.4th at 1260.  And because there is no indication in the record that he will voluntarily violate those local ordinances, *see* App'x at 46 (Springer acknowledging, in his verified motion, that he is "a law-abiding citizen"), a favorable decision by this Court would not redress his alleged injury.  In other words, even if we were to hold the public health order unconstitutional, Springer would still be unable to carry firearms in the playgrounds and parks he wishes to visit.

Springer does not dispute that these unchallenged state statutes and local ordinances also restrict firearm possession on the playgrounds and parks he intends to visit.  Instead, he makes two arguments in an attempt to establish redressability in spite of these overlapping laws.

First, Springer argues that a decision enjoining enforcement of the public health order would redress his injury because local authorities have stated that they will not enforce these local ordinances restricting gun possession on playgrounds and parks.  As his argument goes, without a credible threat of prosecution under the overlapping restrictions, injunctive relief would allow him to carry a firearm in a park or playground.  For support, Springer cites a statement made by Bernalillo

County Sheriff Josh Allen to the media following the issuance of the NMDOH's

public health order in which Allen stated that a firearm ban at playgrounds would not

be enforceable.  *See* Aple. Supp. Br. at 1.  Additionally, Springer references an email

that the Bernalillo County Sheriff's Office sent to a reporter which stated that the

department "will not enforce the [firearm] ban in playgrounds or parks."  *Id.*[8]

        But Springer's reliance on these statements is misplaced.  For one thing, the

statements made by local police do not appear in the record.  Instead, Springer

provides a link to a news article containing the purported statements.  Our review,

however, is limited to the evidence and allegations included in the record.  *See*

*Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648 (10th Cir. 2008); *see also*

*Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884) (concluding that

facts supporting jurisdiction—standing included—must "affirmatively appear in the

record").  Thus, we cannot consider these extrajudicial statements when determining

whether Springer has standing.  Instead, in the absence of anything to the contrary,

_____

[8] Springer's supplemental brief also includes a statement by the Albuquerque
Police Chief that "APD will investigate all criminal offenses involving a firearm,"
and "[w]hen officers encounter individuals who violate the state's emergency order
and possession is the only violation, they will forward those cases to the New Mexico
State Police."  Aple. Supp. Br. at 2.  According to Springer, this statement implies
that APD will not enforce local firearm restrictions in parks and playgrounds.  But
we fail to see how that conclusion flows from this lone statement.  In the cited
statement, the Albuquerque Police Chief does not declare an intention to implement a
non-enforcement policy of any law, let alone the local firearm restrictions Springer
contends are not being enforced.  In fact, the Police Chief states that APD will
investigate *all* criminal offenses involving a firearm—a category which presumably
includes violations of local laws.

we must presume that the government will enforce its laws as written.  *See Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016).

In any event, these statements actually undercut Springer's argument.  The firearm ban mentioned in these statements appears to refer to the NMDOH's public health order and *not* any local laws.  The statements were made in response to the public heath order and made no mention of the overlapping ordinances.  In fact, the first paragraph of the article provided by Springer explicitly states that the non-enforcement policy is in reference to "Gov. Michelle Lujan Grisham's temporary ban on carrying firearms at public parks and playgrounds."  *See* Nash Jones, *Sheriff's Department Won't Enforce Gun Ban at Bernalillo County Parks and Playgrounds* (Oct. 12, 2023), https://www.kunm.org/local-news/2023-10-12/sheriffs-department-wont-enforce-gun-ban-at-bernalillo-county-parks-and-playgrounds.  As the Supreme Court has made clear, in order to establish standing in pre-enforcement challenges, a plaintiff must demonstrate a "credible threat of prosecution."  *Susan B. Anthony List*, 573 U.S. at 159.  Thus, the Sheriff's Office statement that it would refuse to enforce the NMDOH's public health order tends to negate any showing of a credible threat of prosecution under the public health order at issue.  Put another way, Springer's claim that the Sheriff will not enforce gun restrictions in parks and playgrounds renders his injury here—namely, not being able to carry in parks or playgrounds without penalty—entirely illusory.  Apparently, at this very moment, Springer can possess a firearm in a park or playground without fearing prosecution by the Sheriff's Office under the public health order.

19

Even if we were to give these statements a generous reading and conclude that "the ban in playgrounds or parks" referred to all firearm prohibitions in playgrounds or parks—including the overlapping local laws—the result is the same. Without a credible threat of prosecution under the public health order, Springer cannot show an injury. Therefore, he lacks standing to challenge the public health order even if we were to consider these extrajudicial statements.

Second, Springer suggests that the existence of separate, overlapping firearm restrictions does not deny him standing because the restrictions are currently being challenged in New Mexico state court. Springer does not elaborate on this argument beyond implying that the fates of the overlapping laws are intertwined, such that they rise and fall together based on the merits of Springer's Second Amendment claim. Thus, although by no means explicit, Springer seems to suggest that a favorable decision by our Court would allow him to carry firearms in parks and playgrounds because invalidation of the public health order would "impugn the validity" of the other, resulting in a victory in state court. *Renne*, 501 U.S. at 319. Springer points out that the "state district court acknowledged that guidance from this Court was likely forthcoming and stayed" the matter. Aple. Supp. Br. at 3. Thus, Springer implies that winning this case would solve his problems.

That reasoning, however, misapprehends what redressability requires and cannot be squared with the nature of judicial review. Contrary to Springer's argument, a favorable judgment in this case would have no effect on the validity of the separate, overlapping laws. Judicial power does not "operate on legal rules in the

abstract." *California v. Texas*, 593 U.S. 659, 672 (2021).  Instead, it provides only

"the power to render judgments in individual cases." *Murphy v. NCAA*, 584 U.S.

453, 488 (2018) (Thomas, J., concurring).  And here, the judgment Springer seeks—

an injunction against the enforcement of the public health order—would not alter the

enforcement of the local firearm restrictions.  Federal courts do not render judgments

that toggle all similarly worded laws from "operative" to "inoperative."  Instead,

their judgments only apply to the law at issue in the case before them.

Thus, what Springer appears to need is not a favorable judgment, but an

opinion declaring a ban on firearms in public parks and playgrounds unconstitutional

to use in the parallel state court proceedings.  However, "it is a federal court's

judgment, not its opinion" that must provide relief for an injury to be redressable.

*Haaland v. Brackeen*, 599 U.S. 255, 294 (2023).  In other words, "[r]edressability

requires that the court be able to afford relief *through the exercise of its power*, not

through the persuasive or even awe-inspiring effect of the opinion explaining the

exercise of its power." *Id.* (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 825

(1992) (Scalia, J., concurring in part and concurring in judgment) (emphasis in

original)).  Because Springer seeks nothing more than an advisory opinion that

"might persuade actors who are not before the [C]ourt," he cannot establish

redressability in the face of separate, overlapping laws that he is not willing to

violate. *Id.*

## III.

For the foregoing reasons, we AFFIRM the portion of the district court's order denying the motion to enjoin enforcement of the playgrounds restriction, REVERSE the portion of the district court's order enjoining enforcement of the parks restriction, and REMAND with instructions to dissolve the injunction and to conduct further proceedings consistent with this order.

Entered for the Court


Allison H. Eid
Circuit Judge

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert
Clerk of Court

Jane K. Castro
Chief Deputy Clerk

October 01, 2025

Holly Agajanian
Kyle P Duffy
Office of the Governor
490 Old Santa Fe Trail, Suite 400
Santa Fe, NM 87501

Janet Carter
Carina Bentata Gryting
William James Taylor
Everytown Law
450 Lexington Avenue
P.O. Box 4184
New York, NY 10163

Zachary J. Cook
Zach Cook Law Office
1703 Sudderth, Unit 425
Ruidoso, NM 88345

Mr. A. Blair Dunn
WARBA
400 Gold Ave SW, Suite 1000
Albuquerque, NM 87102

Freya Jamison
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005

Cody R. Rogers
Serpe Andrews
2540 El Paseo Road, Suite D
Las Cruces, NM 88001

**RE:     23-2192, 23-2194, Springer v. Grisham, et al**
          Dist/Ag docket: 1:23-CV-00781-KWR-LF

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40(d)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. *See* Fed. R. App. P. Rule 40 and 10th Cir. R. 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court


cc:     Holly Agajanian
        Russell Bogue
        Thomas Mark Bondy
        Robert Bonta
        Anthony G. Brown
        Andrea Joy Campbell
        Charity R. Clark
        Marcella Coburn
        Zachary J. Cook
        Kyle P Duffy
        A. Blair Dunn
        Keith Ellison
        Robert Ferguson
        Aaron D. Ford
        Aaron M. Frey
        Carina Bentata Gryting
        Michelle A. Henry
        Sarah A Hunger
        Letitia James

Kathleen Jennings
Joshua L. Kaul
Douglas Neal Letter
Anne E. Lopez
Peter F. Neronha
Dana Nessel
Jane Elinor Notz
Robert Hunter Owen
Kelly Marita Percival
Ashwin P. Phatak
Matthew J. Platkin
Kwame Raoul
Cody R. Rogers
Ellen F. Rosenblum
Brian L. Schwalb
William James Taylor
William Tong
Caroline S. Van Zile
Phil Weiser

CMW/jjh